**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN THE MATTER OF THE APPLICATION OF THE ASSOCIATED PRESS; CABLE NEWS NETWORK, INC.; THE NEW YORK TIMES CO.; POLITICO LLC; AND WP CO., LLC, d/b/a THE WASHINGTON POST FOR ACCESS TO CERTAIN SEALED COURT RECORDS** | **Case No.** |

## MOTION FOR PUBLIC ACCESS TO CERTAIN SEALED COURT RECORDS

The Associated Press ("AP"), Cable News Network, Inc. ("CNN"), The New York Times Company ("The Times"), POLITICO LLC ("Politico") and WP Co., LLC, d/b/a/ the Washington Post (the "Post") (collectively, the "Media Coalition"), by and through their undersigned attorneys, respectfully move this Court pursuant to Local Criminal Rule 57.6 for an order unsealing certain court records pertaining to the investigation by Special Counsel Robert Mueller into possible links between the campaign of President Donald Trump and Russian efforts to influence the 2016 election (the "Russia Investigation"). Specifically, and as described more fully in the accompanying Memorandum of Points and Authorities in Support of this Motion, the Media Coalition seeks access to two categories of records: (1) the warrants, applications, supporting affidavits, and returns relating to all search, seizure, or Stored Communications Act warrants pertaining to the Russia Investigation (the "Warrant Materials"); and (2) certain judicial records in the Special Counsel's prosecution of President Trump's former campaign manager, Paul Manafort, Jr., *United States v. Manafort*, No. 1:17-cr-00201-ABJ (D.D.C. Oct. 27, 2017) (the "Manafort Records").

**Factual and Procedural Background:**

Insofar as publicly disclosed, the Special Counsel's office has to date filed seven criminal actions against 22 defendants in this Court (the "Special Counsel Defendants"). All of the Special Counsel Defendants except Manafort and the Internet Research Agency defendants have pleaded guilty, one of whom has been sentenced. Those cases are:

- *United States v. Manafort*, No. 1:17-cr-00201-ABJ-1 (D.D.C. Oct. 17, 2017).

- *United States v. Gates*, No. 1:17-cr-00201-ABJ-2 (D.D.C. Oct. 17, 2017).

- *United States v. Flynn*, No. 1:17-cr-00232-EGS (D.D.C. Nov. 30, 2017).

- *United States v. Papadopoulos*, No. 1:17-cr-00182-RDM (D.D.C. Oct. 3, 2017).

- *United States v. Pinedo*, No. 1:18-cr-00024-DLF (D.D.C. Feb. 7, 2018).

- *United States v. van der Zwaan*, No. 1:18-cr-00031-ABJ (D.D.C. Feb. 16, 2018).

- *United States v. Internet Research Agency, et al.*, No. 1:18-cr-00032-DLF (D.D.C. Feb. 16, 2018).

An unknown number of warrants related to these actions and other aspects of the Russia Investigation remain under seal.

The Special Counsel's office has stated that it provided materials related to at least 19 warrants to Manafort, some with redactions. *See* Gov't Opp. to Def. Paul J. Manafort, Jr.'s Mot. to Compel Production of Unredacted Search and Seizure Warrant Affidavits at 1-2, *United States v. Manafort*, No. 1:17-cr-00201-ABJ (D.D.C. Apr. 5, 2018), Dkt. 253. Although the cases themselves remain under seal, prosecutors publicly listed the case numbers for seven of those warrants obtained from this Court:

- *In the Matter of the Search of Information Associated with Email Account pmanafort@dmpint.com*, No. 17-mj-00611 (produced in redacted form);

- *In the Matter of the Search of Information Associated With [Two Email Accounts]*, No. 17-mj-00612 (produced unredacted);

- *In the Matter of the Search of Hard Drive With Serial Number WXB1AA006666*, No. 17-mj-496 (produced unredacted);

- *In the Matter of the Seizure of Funds from Accounts at Three Banks*, Nos. 17-mj-00783, 17-mj-00784, and 17-mj-00785 (produced unredacted); and

- *In the Matter of the Search of Information Associated With Five Telephone Numbers Controlled by AT&T*, No. 18-sc-609 (produced in redacted form).

Affidavits Produced Since Receipt of March 19, 2018 Letter, *United States v. Manafort*, No. 1:17-cr-00201-ABJ (D.D.C. Apr. 5, 2018), Dkt. 253.

Additionally, several items listed on the public docket in the prosecution of Manafort and Gates, No. 1:17-cr-00201-ABJ, are currently unavailable to the public in whole or in part.  They include:

- From Dkt. 166, an exhibit to the motion to withdraw by Gates' former attorneys;

- Transcript of January 22, 2018 hearing;

- Transcript of February 7, 2018 hearing on Gates' counsel's request to withdraw;

- Sealed portion of transcript of February 14, 2018 hearing;

- The copy of the warrant and related materials obtained in the Eastern District of Virginia for the May 2017 search of a storage unit in Alexandria, Virginia.  *See* Defendant Paul J. Manafort, Jr.'s Motion to Suppress Evidence and All Fruits Thereof Relating to the Government's Search of the Storage Unit Located in Alexandria, Virginia, *United States v. Manafort*, No. 1:17-cr-00201-ABJ-1 (D.D.C. Apr. 6, 2018), Dkt. 257 ("Storage Unit Motion"); and

- The copy of the warrant and related materials obtained in the Eastern District of Virginia for the July 2017 search of Manafort's residence in Alexandria, Virginia. *See* Defendant Paul J. Manafort, Jr.'s Motion to Suppress Evidence and the Fruits Thereof Relating to the Government's Search of His Residence Located in Alexandria, Virginia, *United States v. Manafort*, No. 1:17-cr-00201-ABJ-1 (D.D.C. Apr. 9, 2018), Dkt. 264 ("Residence Motion").

Manafort attached the latter two items – in heavily redacted form – to suppression motions.  *See* Defendant Paul J. Manafort, Jr.'s Motion to Suppress Evidence and All Fruits Thereof Relating to the Government's Search of the Storage Unit Located in Alexandria, Virginia, *United States v.*

*Manafort*, No. 1:17-cr-00201-ABJ-1 (D.D.C. Apr. 6, 2018), Dkt. 257; Defendant Paul J.

Manafort, Jr.'s Motion to Suppress Evidence and the Fruits Thereof Relating to the

Government's Search of His Residence Located in Alexandria, Virginia, *United States v.*

*Manafort*, No. 1:17-cr-00201-ABJ-1 (D.D.C. Apr. 9, 2018), Dkt. 264.

**Applicants' Interest in the Matters:**

The Media Coalition seeks access to the Warrant Materials and the Manafort Records to

fulfill their role of informing the American public about issues fundamental to our democracy.

The Russia Investigation goes to the heart of the integrity of the political process, the potential

corruption or other misconduct of the President of the United States and his closest advisers—or,

as some of the President's supporters have argued, a corrupt conspiracy by some in law

enforcement to harm the President—and the ability of the justice system to fairly and effectively

investigate and, where necessary, prosecute any of these potential crimes.  *See Citizens for*

*Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1092-93 (D.C.

Cir. 2014) (recognizing "weighty public interest in shining a light on the FBI's investigation of

major political corruption" and importance of materials that "shed light on how the FBI and the

DOJ handle the investigation of crimes that undermine the very foundation of our government").

Already, the President's former national security adviser and two former campaign aides have

pleaded guilty to committing felonies, and his former campaign manager stands accused in two

federal courts of crimes related to his work for Russia-connected individuals and organizations.

And, of course, one of the ultimate questions in the Russia Investigation is whether the President

himself unlawfully attempted to influence or obstruct the probe.  The gravity and importance of

this criminal investigation is second to none in our nation's history, and therefore the public's

interest in the transparency of that investigation could not be greater.  As set forth in the

accompanying Memorandum of Points and Authorities, the public has a qualified right of access to these materials under the First Amendment and the common law, and no compelling governmental interests justify the continued wholesale sealing of the Warrant Materials and Manafort Records.

**Relief Requested:**

By this Motion, the Media Coalition seeks access to the Warrant Materials and the Manafort Records.  The Warrant Materials to which the Media Coalition seeks access include all warrants, applications, supporting affidavits, and returns relating to all search, seizure, or Stored Communications Act warrants pertaining to the Russia Investigation.  For those materials already produced to Manafort, the Media Coalition seeks access to them in the form produced to Manafort.  The Manafort Records are the specific items listed *supra* that are under seal in whole or in part.  Regarding the warrant for the search of Manafort's Virginia home, to the extent that the publicly filed version contains more redactions than the version produced by the government to Manafort, the Media Coalition seeks access to the version as produced to Manafort.

This miscellaneous action is related to *United States v. Manafort*, No. 1:17-cr-00201-ABJ-1 (D.D.C. Oct. 17, 2017); the criminal prosecutions of the other Special Counsel Defendants, *United States v. Gates*, No. 1:17-cr-00201-ABJ-2 (D.D.C. Oct. 17, 2017), *United States v. Flynn*, No. 1:17-cr-00232-EGS (D.D.C. Nov. 30, 2017), *United States v. Papadoupoulos*, No. 1:17-cr-00182-RDM (D.D.C. Oct. 3, 2017), *United States v. Pinedo*, No. 1:18-cr-00024-DLF (D.D.C. Feb. 7, 2018), *United States v. van der Zwaan*, No. 1:18-cr-00031-ABJ (D.D.C. Feb. 16, 2018), and *United States v. Internet Research Agency, et al.*, No. 1:18-cr-00032-DLF (D.D.C. Feb. 16, 2018); the warrant actions identified in the Manafort prosecution, Nos. 17-mj-496, 17-mj-00611, 17-mj-00612, 17-mj-00784, 17-mj-00785, and 18-sc-609; and

any and all warrant actions pertaining to the Russia Investigation whose case numbers and dockets remain sealed.

WHEREFORE, for the reasons stated herein and in the accompanying Memorandum of Points and Authorities, the Media Coalition respectfully requests that the Court enter an order unsealing the requested Warrant Materials and Manafort Records.

## REQUEST FOR HEARING

The Media Coalition respectfully requests an oral hearing on this Motion.

Respectfully submitted,

Dated: April 25, 2018                    BALLARD SPAHR LLP


By:    /s/ Jay Ward Brown
_____

Jay Ward Brown (D.C. Bar No. 437686)
brownjay@balladspahr.com
Matthew E. Kelley (D.C. Bar No. 1018126)
kelleym@ballardspahr.com
BALLARD SPAHR LLP
1909 K Street, NW
Washington, D.C. 20006-1157
T: (202) 508-1136
F: (202) 661-2299

*Counsel for The Associated Press; Cable News Network, Inc.; The New York Times Co.; POLITICO LLC; and WP Co., LLC, d/b/a/ the Washington Post*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

IN THE MATTER OF THE APPLICATION OF
THE ASSOCIATED PRESS; CABLE NEWS
NETWORK, INC.; THE NEW YORK TIMES CO.;
POLITICO LLC; AND WP CO., LLC, d/b/a THE
WASHINGTON POST FOR ACCESS TO
CERTAIN SEALED COURT RECORDS

Case No.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
<u>PUBLIC ACCESS TO CERTAIN SEALED COURT RECORDS</u>**

BALLARD SPAHR LLP

Jay Ward Brown (D.C. Bar No. 437686)
brownjay@balladspahr.com
Matthew E. Kelley (D.C. Bar No. 1018126)
kelleym@balladspahr.com

1909 K Street, NW
Washington, D.C. 20006-1157
T: (202) 508-1136
F: (202) 661-2299

*Counsel for The Associated Press; Cable News
Network, Inc.; The New York Times Co.; POLITICO
LLC; and WP Co., LLC, d/b/a the Washington Post*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND ...................................................................................................................... 2

    I.    Russian Interference In The 2016 Election ............................................................ 2

    II.   The Special Counsel's Investigation .................................................................... 3

    III.  The Indictments And Guilty Pleas ....................................................................... 6

    IV.  The Records Sought By The Media Coalition ...................................................... 7

        A.    Warrant Materials ....................................................................................... 7

        B.    Records in United States v. Manafort ........................................................ 8

ARGUMENT ............................................................................................................................ 10

    I.    The Public's First Amendment And Common Law Rights of Access
        Attach To The Warrant Materials And Cannot Be Overcome Here .................... 10

        A.    The First Amendment Provides a Right of Access to Warrant
            Materials ....................................................................................................... 11

        B.    The Common-Law Right of Access Also Applies To Warrant
            Materials ....................................................................................................... 13

        C.    No Compelling Interest Justifies The Continued Blanket Sealing
            Of The Warrant Materials ........................................................................... 14

        D.    The Public's Interest In Disclosure Outweighs Any Need For
            Secrecy Of The Warrant Materials ............................................................ 17

    II.   The Public's First Amendment And Common Law Rights of Access
        Similarly Attach To The Manafort Records And Cannot Be Overcome
        Here ................................................................................................................... 19

CONCLUSION ........................................................................................................................ 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Baltimore Sun Co. v. Goetz*,
886 F.2d 60 (4th Cir. 1989) ................................................................12

*Citizens for Responsibility & Ethics in Washington v. U.S. Department of Justice*,
746 F.3d 1082 (D.C. Cir. 2014) ............................................................18

*Globe Newspaper Co. v. Superior Court for Norfolk County*,
457 U.S. 596 (1982)................................................................14

*\*In re Application of New York Times Co. for Access to Certain Sealed Court Records*,
585 F. Supp. 2d 83 (D.D.C. 2008) ........................................... *passim*

*\*In re Application of WP Co. LLC*,
201 F. Supp. 3d 109 (D.D.C. 2016)........................................... *passim*

*\*In re Application of WP Co. LLC*,
2016 WL 1604976 (D.D.C. Apr. 1, 2016) ............................10, 12, 16

*In re McClatchy Newspapers, Inc.*,
288 F.3d 369 (9th Cir. 2002) ................................................................16

*In re Search Warrant for Secretarial Area Outside Office of Gunn*,
855 F.2d 569 (8th Cir. 1988) ................................................................11

*In re Special Proceedings*,
842 F. Supp. 2d 232 (D.D.C. 2012)................................................17, 19

*Metlife, Inc. v. Financial Stability Oversight Council*,
865 F.3d 661 (D.C. Cir. 2017)................................................................21

*Monitor Patriot Co. v. Roy*,
401 U.S. 265 (1971)................................................................18

*Nixon v. Warner Communications, Inc.*,
435 U.S. 589 (1978)................................................................13

*Press-Enterprise Co. v. Superior Court of California, Riverside County*,
464 U.S. 501 (1984)................................................................14

*Press-Enterprise Co. v. Superior Court*,
478 U.S. 1 (1986)................................................................20

*SEC v. American International Group*,
712 F.3d 1 (D.C. Cir. 2013)................................................................20, 21

\*_United States v. Business of Custer Battlefield Museum & Store_,
   658 F.3d 1188 (9th Cir. 2011) ...................................................................... _passim_

\*_United States v. Hubbard,_
   650 F.2d 293 (D.C. Cir. 1980) ...........................................................................20

_United States v. Loughner_,
   769 F. Supp. 2d 1188 (D. Ariz. 2011) ..........................................................16, 17

_United States v. Sealed Search Warrants_,
   868 F.3d 385 (5th Cir. 2017) .......................................................................11, 13

_Virginia Department of State Police v. Washington Post_,
   386 F.3d 567 (4th Cir. 2004) .......................................................................14, 17

\*_Washington Post v. Robinson_,
   935 F.2d 282 (D.C. Cir. 1991) .....................................................................15, 17

## OTHER AUTHORITIES

Fed. R. Crim. P. 41(i).............................................................................................10

Office of the Deputy Attorney General, Order No. 3915-2017, _Appointment of Special
   Counsel to Investigate Russian Interference With the 2016 Presidential Election and
   Related Matters_ (May 17, 2017) .............................................................................4

Office of the Director of National Intelligence, _Assessing Russian Activities and
   Intentions in Recent US Elections_ (Jan. 6, 2017) ...................................................2, 3

Special Counsel's Office, U.S. Department of Justice, https://www.justice.gov/sco....................6

_United States v. Flynn_,
   No. 1:17-cr-00232-EGS (D.D.C.)......................................................................3, 4, 6

_United States v. Gates_,
   No. 1:17-cr-00201-ABJ-2 (D.D.C.).........................................................................6

_United States v. Internet Research Agency, et al._,
   No. 1:18-cr-00032-DLF (D.D.C.).............................................................................7

_United States v. Manafort_,
   No. 1:17-cr-00201-ABJ (D.D.C.) .................................................................... _passim_

_United States v. Papadopoulos_,
   No. 1:17-cr-00182-RDM (D.D.C.) ..........................................................................6

_United States v. Pinedo_,
   No. 1:18-cr-00024-DLF (D.D.C.).............................................................................6

*United States v. van der Zwaan,*
  No. 1:18-cr-00031-ABJ (D.D.C.) .............................................................................................6

.                                                                      iv

## PRELIMINARY STATEMENT

The investigation by Special Counsel Robert Mueller into possible links between the campaign of President Donald Trump and Russian efforts to influence the 2016 election (the "Russia Investigation") is one of the most consequential criminal investigations in our nation's history.  Through this action, The Associated Press ("AP"), Cable News Network, Inc. ("CNN"), The New York Times Company ("The Times"), POLITICO LLC ("Politico") and the WP Co., LLC, d/b/a/ the Washington Post (the "Post") (collectively, the "Media Coalition") seek to unseal court records concerning the Russia Investigation to better inform the American public about this critically important issue.

Specifically, the Media Coalition seeks to vindicate the public's First Amendment and common-law right of access to two kinds of records.  First, the Media Coalition seeks access to the warrants, applications, supporting affidavits, and returns relating to all search, seizure, or Stored Communications Act warrants pertaining to the Russia Investigation (the "Warrant Materials").  Second, the Media Coalition seeks to unseal transcripts of hearings and other judicial records in the Special Counsel's prosecution of President Trump's former campaign manager, Paul Manafort, Jr., *United States v. Manafort*, No. 1:17-cr-00201-ABJ (D.D.C. Oct. 27, 2017) (the "Manafort Records").

These documents should be released because they are judicial records to which the public has qualified access rights under both the First Amendment and the common law.  The First Amendment access right can be overcome only by a showing that secrecy is necessary to protect a compelling interest and the sealing is narrowly tailored to serve that interest.  Here, the interests in continued secrecy that arguably may be at stake – protecting the integrity of the investigation, the secrecy of grand jury proceedings, the identities of confidential informants and the privacy of potentially innocent people – are insufficient to overcome the overwhelming

1

public interest in these materials and can in any event be served by narrowly tailored redactions

to the documents.  Under the common law, courts balance the public's right to information about

the workings of the criminal justice system against the legitimate countervailing interests of the

government; here, that balance tips decisively in favor of the public.  This Court, therefore,

should order the Warrant Materials and Manafort Records to be released, subject to any precisely

targeted redactions necessary to protect greater interests.

## **BACKGROUND**

**I.     Russian Interference In The 2016 Election**

The 2016 presidential election was not just heated and expensive; it was the subject of an

unprecedented effort by a hostile foreign government to influence, undermine and discredit our

democratic process.  U.S. intelligence agencies have publicly concluded that

> Russian President Vladimir Putin ordered an influence campaign in
> 2016 aimed at the US presidential election. Russia's goals were to
> undermine public faith in the US democratic process, denigrate
> Secretary [Hillary] Clinton, and harm her electability and potential
> presidency. We further assess Putin and the Russian Government
> developed a clear preference for President-elect Trump.

Office of the Director of National Intelligence, Assessing Russian Activities and Intentions in

Recent US Elections, at ii (Jan. 6, 2017),

https://www.dni.gov/files/documents/ICA_2017_01.pdf. ("Intelligence Assessment").  For

example, Russian intelligence services were involved in hacking into the computer systems of

the Democratic National Committee, stealing large amounts of data including internal emails,

and facilitating the release of those emails on the website WikiLeaks.  *Id.* at 2-3.  Russian

intelligence also deployed a network of online "trolls" directed by the St. Petersburg-based

Internet Research Agency to plant political messages – primarily criticism of Clinton – online

and in social media.  *Id.* at 2-4.  The U.S. intelligence community's assessment was that "Putin

and the Russian Government aspired to help President-elect Trump's election chances when

possible by discrediting Secretary Clinton and publicly contrasting her unfavorably to him." *Id.*

at ii.

## II.     The Special Counsel's Investigation

Beginning in the summer of 2016, the FBI and other federal authorities began an

investigation that would eventually focus on the Russian government's "efforts to interfere in the

2016 presidential election, including the nature of any links between individuals associated with

the [Trump] Campaign and Russia, and whether there was any coordination between the

Campaign and Russia's efforts."  Statement of the Offense at 1, *United States v. Flynn*, No. 1:17-

cr-00232-EGS (D.D.C. Dec. 1, 2017), Dkt. 4.

The news media were investigating as well.  In early 2017, members of the Media

Coalition and other news organizations broke stories about many of the links that federal

authorities also were investigating.  For example, in February 2017 the Post reported that,

contrary to the administration's denials, then-National Security Adviser Michael Flynn had

discussed sanctions that the U.S. had imposed on Russia in a December 2016 phone call with

Russia's ambassador, and that the Justice Department had warned the Trump administration that

this contact could leave Flynn vulnerable to Russian blackmail.[1]  Flynn would eventually plead

---

[1] Greg Miller, Adam Entous and Ellen Nakashima, *National security adviser Flynn discussed sanctions with Russian Ambassador, despite denials, officials say*, WASH. POST (Feb. 9, 2017), https://www.washingtonpost.com/world/national-security/national-security-adviser-flynn-discussed-sanctions-with-russian-ambassador-despite-denials-officials-say/2017/02/09/f85b29d6-ee11-11e6-b4ff-ac2cf509efe5_story.html?noredirect=on&utm_term=.09cc2f6cd7f6; Adam Entous, Ellen Nakashima and Philip Rucker, *Justice Department warned White House that Flynn could be vulnerable to Russian blackmail, officials say*, WASH. POST (Feb. 13, 2017), https://www.washingtonpost.com/world/national-security/justice-department-warned-white-house-that-flynn-could-be-vulnerable-to-russian-blackmail-officials-say/2017/02/13/fc5dab88-f228-11e6-8d72-263470bf0401_story.html?utm_term=.1b43a41702b7.

guilty to lying to the FBI about that conversation with the Russian ambassador.  Statement of the

Offense at 2-3, *United States v. Flynn*, Case No. 1:17-cr-00232-EGS (D.D.C. Dec. 1, 2017), Dkt.

4.

As the FBI's investigation progressed, President Trump fired then-FBI Director James

Comey in May 2017; The Times then reported that Comey had memorialized a conversation

with the president in which Trump asked Comey to drop the FBI's investigation of Flynn.[2]  The

Justice Department shortly thereafter appointed former FBI Director Robert Muller as special

counsel.[3]  Mueller was tasked with investigating "any links and/or coordination between the

Russian government and individuals associated with the campaign of President Donald Trump"

and any related matters.  Office of the Deputy Attorney General, Order No. 3915-2017,

*Appointment of Special Counsel to Investigate Russian Interference With the 2016 Presidential*

*Election and Related Matters* (May 17, 2017), available at https://www.justice.gov/opa/press-

release/file/967231/download.

The Times, meanwhile, broke the news that members of the Trump campaign – his son,

Donald Trump, Jr.; son-in-law, Jared Kushner; and campaign manager Paul Manafort – met in

July 2016 at Trump Tower with a Russian attorney with links to the Russian government after

being promised damaging information the Russian government had about Clinton.[4]  Less than a

---

[2] Michael S. Schmidt, *Comey Memo Says Trump Asked Him to End Flynn Investigation*, N.Y. TIMES (May 16, 2017), https://www.nytimes.com/2017/05/16/us/politics/james-comey-trump-flynn-russia-investigation.html.

[3] Eric Tucker and Sadie Gurman, *Former FBI Director Mueller to lead Trump-Russia probe*, ASSOCIATED PRESS (May 18, 2017), https://www.apnews.com/324cc49ac17c431682cb496f1e7e85c4/Former-FBI-Director-Mueller-to-lead-Trump-Russia-probe.

[4] Jo Becker, Matt Apuzzo and Adam Goldman, *Trump's Son Met With Russian Lawyer After Being Promised Damaging Info on Clinton*, N.Y. TIMES (July 8, 2017), https://www.nytimes.com/2017/07/09/us/politics/trump-russia-kushner-

month after that report, authorities executed a search warrant at Manafort's condominium in

Virginia, which also generated substantial news coverage once the search became known.[5]

Not surprisingly, the Special Counsel's investigation – and its use of search warrants in

particular – has commanded the attention of the American public since its inception.[6]  For his

part, President Trump has frequently and vigorously denounced the Russia Investigation as a

"witch hunt," "fake news," and "phony," among other criticisms of it, while others who support

the President have characterized the Investigation as a conspiracy by Justice Department officials

and others to harm the President.[7]

---

manafort.html?hp&action=click&pgtype=Homepage&clickSource=story-heading&module=first-column-region&region=top-news&WT.nav=top-news.

[5] *See, e.g.*, Chad Day and Eric Tucker, *FBI agents searched former Trump campaign chair's home*, ASSOCIATED PRESS (Aug. 10, 2017), https://apnews.com/6a487dd3a06340cbbfa3fe9405c49aef.

[6] *See, e.g.*, Jonathan Lemire and Chad Day, *Trump says he was surprised by FBI's search of Manafort home*, ASSOCIATED PRESS (Aug. 11, 2017), https://apnews.com/45719a1bc5d94765bb7a905aeb4c2b75/Trump-says-he-was-surprised-by-FBI%27s-search-of-Manafort-home; Dylan Byers, *Facebook handed Russia-linked ads over to Mueller under search warrant*, CNN (Sept. 17, 2017), http://money.cnn.com/2017/09/15/media/facebook-mueller-ads/index.html; Kara Scannell and Shimon Prokupecz, *Exclusive: Mueller's team questioning Russian oligarchs*, CNN (Apr. 4, 2018), https://www.cnn.com/2018/04/04/politics/mueller-special-counsel-investigation-russian-oligarchs/index.html; Manu Raju, Pamela Brown and Evan Perez, *Exclusive: IRS shares information with special counsel in Russia probe*, CNN (Sept. 26, 2017), https://www.cnn.com/2017/09/26/politics/special-counsel-irs-russia-probe-information-sharing/index.html; Sharon LaFraniere, Matt Apuzzo and Adam Goldman, *With a Picked Lock and a Threatened Indictment, Mueller's Inquiry Sets a Tone*, N.Y. TIMES (Sept. 18, 2017), https://www.nytimes.com/2017/09/18/us/politics/mueller-russia-investigation.html.

[7] *See, e.g.*, Eli Watkins, *Some of the times Trump has called the Russia probe a 'witch hunt'*, CNN (Jan. 11, 2018), https://www.cnn.com/2018/01/10/politics/donald-trump-witch-hunt-justice-department/index.html; Transcript: Interview With Florida Congressman Matt Gaetz, CNN (Jan. 29, 2018), http://transcripts.cnn.com/TRANSCRIPTS/1801/29/cg.02.html (congressman asserting existence of "conspiracy to undermine the President of the United States" by FBI and Justice Department).

.

### III.    The Indictments And Guilty Pleas

To date, insofar as publicly disclosed, the Special Counsel's office has initiated seven

criminal actions against 22 defendants in this Court (the "Special Counsel Defendants"), five of

whom have pleaded guilty and one of whom has been sentenced.  *See generally* Special

Counsel's Office, U.S. Department of Justice, https://www.justice.gov/sco (listing cases initiated

by the Special Counsel's office).   Those cases are:

- *United States v. Manafort*: Paul Manafort is charged with conspiracy against the United States, money laundering conspiracy, failing to register as an agent of a foreign principal, and making false statements.  Superseding Indictment at 25-29, *United States v. Manafort*, No. 1:17-cr-00201-ABJ-1 (D.D.C. Feb. 23, 2018), Dkt. 201.

- *United States v. Gates*: Richard Gates, a co-defendant with Manafort, and Manafort's former "right-hand man," pleaded guilty to conspiracy against the United States and making a false statement to the FBI.  *See* Superseding Criminal Information at 23-25, *United States v. Gates*, No. 1:17-cr-00201-ABJ-2 (D.D.C. Feb. 2, 2018), Dkt. 195; Statement of the Offense at 1-8, *United States v. Gates*, Case No. 1:17-cr-00201-ABJ-2 (D.D.C. Feb. 23, 2018), Dkt. 206.

- *United States v. Flynn*: Michael Flynn pleaded guilty to making false statements to the FBI including mischaracterizing his conversation with the Russian ambassador during the transition period.  Statement of the Offense at 1-2, *United States v. Flynn*, No. 1:17-cr-00232-EGS (D.D.C. Dec. 1, 2017), Dkt. 4.

- *United States v. Papadopoulos*: George Papadopoulos, a former Trump campaign foreign policy adviser, pleaded guilty to making false statements to the FBI regarding his interactions with people he believed to have ties to the Russian government. Statement of the Offense at 1-3, *United States v. Papadopoulos*, No. 1:17-cr-00182-RDM  (D.D.C. Oct. 5, 2017), Dkt. 19.

- *United States v. Pinedo*: Richard Pinedo pleaded guilty to identity theft for selling fraudulent bank account numbers, some of which were presumably used in furtherance of Russia's election interference efforts.  Statement of the Offense at 1-2, *United States v. Pinedo*, No. 1:18-cr-00024-DLF (D.D.C. Feb. 12, 2018), Dkt. 13.

- *United States v. van der Zwaan*: Alex van der Zwaan, formerly a lawyer in the London office of Skadden, Arps, Slate, Meagher & Flom LLP, pleaded guilty to making false statements to the Special Counsel's office and the FBI regarding his contacts with Manafort and another person regarding his firm's report about the trial of a Ukrainian opposition figure. Statement of the Offense at 1-3, *United States v. van*

*der Zwaan*, No. 1:18-cr-00031-ABJ (D.D.C. Feb. 20, 2018), Dkt. 9.  Van der Zwaan was sentenced to 30 days in jail and a fine of $20,000.

- *United States v. Internet Research Agency, et al.*: The indictment charges three Russian companies and 13 individuals with unlawfully engaging in political activities in the United States in furtherance of Russia's attempts to interfere with the 2016 election.  Indictment at 1, *United States v. Internet Research Agency, et al.*, No. 1:18-cr-00032-DLF (D.D.C. Feb. 16, 2018), Dkt. 1.

## IV.    The Records Sought By The Media Coalition

As noted above, the Media Coalition seeks the unsealing of two kinds of court records related to the Russia Investigation:  what are referred to here as the Warrant Materials and the Manafort Records:

### A.    Warrant Materials

The Media Coalition seeks records associated with the application for, issuance of, and returns regarding warrants related to the Russia Investigation, including each of the cases involving the Special Counsel Defendants described *supra*.  Because most of these warrant actions are sealed, the Media Coalition is unaware of the precise number of warrants involved, as well as most of the case numbers associated with those warrants, although the Special Counsel's office has made public the case numbers for a few of the warrants related to Manafort.  In response to a motion by Manafort to compel production of unredacted search warrant affidavits, the Special Counsel's office has stated that it has provided to Manafort materials related to at least 19 search or seizure warrants, some with redactions to "protect[] the identity of various sources of information and the need to preserve the confidentiality of ongoing investigations." Gov't Opp. to Def. Paul J. Manafort, Jr.'s Mot. to Compel Production of Unredacted Search and Seizure Warrant Affidavits at 1-2, *United States v. Manafort*, No. 1:17-cr-00201-ABJ (D.D.C. Apr. 5, 2018), Dkt. 253.  The Special Counsel's office listed in an attachment to its response the case numbers of nine of those warrants, whose supporting affidavits it had produced to Manafort

either unredacted or in redacted form.  *See* Affidavits Produced Since Receipt of March 19, 2018

Letter, *United States v. Manafort*, No. 1:17-cr-00201-ABJ (D.D.C. Apr. 5, 2018), Dkt. 253-1.

Seven of those warrants were obtained from this Court:

- *In the Matter of the Search of Information Associated with Email Account pmanafort@dmpint.com*, No. 17-mj-00611 (produced in redacted form);

- *In the Matter of the Search of Information Associated With [Two Email Accounts]*, No. 17-mj-00612 (produced unredacted);

- *In the Matter of the Search of Hard Drive With Serial Number WXB1AA006666*, No. 17-mj-496 (produced unredacted);

- *In the Matter of the Seizure of Funds from Accounts at Three Banks*, Nos. 17-mj-00783, 17-mj-00784, and 17-mj-00785 (produced unredacted); and

- *In the Matter of the Search of Information Associated With Five Telephone Numbers Controlled by AT&T*, No. 18-sc-609 (produced in redacted form).

*Id.*[8]  The Warrant Materials the Media Coalition seeks to unseal include, but are not limited to,

all such materials produced to Manafort in the form produced to Manafort.

### B.    Records in United States v. Manafort

The Media Coalition also seeks to unseal judicial records in the prosecution of Manafort

and Gates, No. 1:17-cr-00201-ABJ (D.D.C. Oct. 27, 2017), that are currently unavailable to the

public.  The Manafort Records, including the docket numbers where that information is publicly

available, include:

- From Dkt. 166, an exhibit to the motion to withdraw by Gates' former attorneys;

- Transcript of January 22, 2018 hearing;

- Transcript of February 7, 2018 hearing on Gates' counsel's request to withdraw;

- Sealed portion of transcript of February 14, 2018 hearing;

---

[8]   The two additional warrants were obtained from the U.S. District Court for the Eastern District of Virginia.  Manafort has filed in this Court redacted copies of those warrants in connection with motions to suppress, which are discussed *infra* as among the Manafort Records.

- The copy of the warrant and related materials obtained in the Eastern District of Virginia for the May 2017 search of a storage unit in Alexandria, Virginia. *See* Defendant Paul J. Manafort, Jr.'s Motion to Suppress Evidence and All Fruits Thereof Relating to the Government's Search of the Storage Unit Located in Alexandria, Virginia, *United States v. Manafort*, No. 1:17-cr-00201-ABJ-1 (D.D.C. Apr. 6, 2018), Dkt. 257 ("Storage Unit Motion"); and

- The copy of the warrant and related materials obtained in the Eastern District of Virginia for the July 2017 search of Manafort's residence in Alexandria, Virginia. *See* Defendant Paul J. Manafort, Jr.'s Motion to Suppress Evidence and the Fruits Thereof Relating to the Government's Search of His Residence Located in Alexandria, Virginia, *United States v. Manafort*, No. 1:17-cr-00201-ABJ-1 (D.D.C. Apr. 9, 2018), Dkt. 264 ("Residence Motion").

With respect to the latter two items, as submitted by Manafort, the warrant materials are heavily redacted, including the entire inventory of items seized during the search of his condominium and large portions of the affidavits in support of the warrants. *See id.* Exs. A & B; Storage Unit Motion Exs. A & B. Although it is unclear if the redactions to the publicly filed versions of these records are limited to those the government made before producing them to Manafort, the motions do not discuss the scope of the redactions. *See, e.g.*, Residence Motion at 1 n.1 & 3 n.4. It appears likely, however, that the redactions go further than those the government made; the Residence Motion describes some of the items seized as including Apple iPod devices, while as noted the inventory is entirely redacted from the version filed in open court. *Compare id.* at 7 *with id.* Ex. A at 3-6.[9]  If the publicly filed versions indeed contain more redactions than the versions provided by the government to Manafort, the Media Coalition seeks access to the versions as provided to Manafort.

---

[9] In its response to the Residence Motion, the Special Counsel's Office attached to its brief copies of two letters to counsel for Manafort that state the versions of the residence and storage unit warrants produced to him had been redacted "to protect the identity of individuals who provided information and the government's ongoing investigation."  Gov't Mem. in Opp. to Def. Paul J. Manafort, Jr.'s Mot. to Suppress Evidence and the Fruits Thereof Relating to the Search of His Residence Located in Alexandria, Virginia at 2 n.1 & Ex. A at 2, *United States v. Manafort*, No. 1:17-cr-00201-ABJ-1 (D.D.C. April 23, 2018), Dkt. 284.

# ARGUMENT

Particularly given the overwhelming public importance of the Russia Investigation to our self-government, the public has a presumptive, albeit qualified right of access to court records related to the Russia Investigation.  This qualified right, which exists under both the First Amendment and the common law, requires the release – with redactions, where necessary – of the materials the Media Coalition seeks in this action.

## I. The Public's First Amendment And Common Law Rights of Access Attach To The Warrant Materials And Cannot Be Overcome Here

Warrants, including the applications, affidavits and returns in connection therewith, are presumptively public both under the law and as a matter of standard practice in this and other federal courts.  *See, e.g., In re Application of WP Co. LLC*, 201 F. Supp. 3d 109, 121 (D.D.C. 2016) ("*In re WP II*") ("'warrant applications and receipts are routinely filed with the clerk of court without seal'") (quoting *In re Application of New York Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 88 (D.D.C. 2008) ("*In re NYT*")); *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1193-94 (9th Cir. 2011) ("*Custer Battlefield*") (same); Fed. R. Crim. P. 41(i) ("The magistrate judge to whom the warrant is returned must attach to the warrant a copy of the return, of the inventory, and of all other related papers and must deliver them to the clerk in the district where the property was seized."). Indeed, in this Court "the routine practice is to make warrant materials publicly available after a search has been executed and a return is available."  *In re NYT*, 585 F. Supp. 2d at 88 n.8.

Federal courts considering the question have held that the public has a qualified right of access to warrant materials, though there has been some inconsistency in the courts' conclusions regarding at what stage of the proceedings that right attaches and whether it arises under the First Amendment, the common law, or both.  *See, e.g., In re Application of WP Co. LLC*, 2016 WL

1604976, at *2 (D.D.C. Apr. 1, 2016) ("*In re WP I*") (recognizing First Amendment right of access to search warrant records issued during investigation that had been closed); *In re NYT*, 585 F. Supp. 2d at 87 (recognizing both First Amendment and common-law right of access to warrant materials after conclusion of investigation); *United States v. Sealed Search Warrants*, 868 F.3d 385, 390 (5th Cir. 2017) (common-law right of access can apply to pre-indictment warrant materials; trial court must determine whether to unseal on case-by-case basis); *Custer Battlefield*, 658 F.3d at 1193-94 (recognizing common-law right of access to warrant materials after completion of criminal investigation); *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573-74 (8th Cir. 1988) ("*Gunn*") (recognizing First Amendment right of access to search warrant materials in ongoing criminal investigation).  The D.C. Circuit has not ruled on the precise questions at issue here:  (1) whether the right of public access to warrant materials attaches upon the warrant's execution and return to the issuing court or (2) whether that access right instead attaches only once the subject or target of the warrant has been indicted or pleaded guilty.  Under the analysis set forth by the D.C. Circuit and applied by other courts in this district, however, the First Amendment and common-law public access rights to warrant materials both attach upon return.

### A.     The First Amendment Provides a Right of Access to Warrant Materials

It is well settled that "[t]he First Amendment guarantees a qualified right of public access to criminal proceedings and related court documents."  *In re WP II*, 201 F. Supp. 3d at 117 (citing *Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 603-04 (1982)). This right of access arises where the court answers affirmatively two questions: "(1) whether the place and process have historically been open to the press and general public, and (2) whether 'public access plays a significant positive role in the functioning of the particular process in question.'"  *In re NYT*, 585 F. Supp. 2d at 87 (citing *Press–Enter. Co. v. Superior Court,* 478

U.S. 1, 8-9 (1986) ("*Press–Enterprise II* ")).  Applying this "experience and logic" test, courts in

this District previously have recognized that a First Amendment right of public access applies to

warrant materials at the latest after an investigation has concluded.  *In re WP I*, 2016 WL

1604976, at *2; *In re NYT*, 585 F. Supp. 2d at 88.[10]  Here, experience and logic compel the

conclusion that the First Amendment provides a right of access to the warrant materials the

Media Coalition seeks regardless of whether the overall investigation can formally be deemed

"concluded."

First, as discussed *supra*, warrant materials have long been presumptively public, usually

upon the return of the executed warrant, both in the District of Columbia and other federal

courts.  *In re WP II*, 201 F. Supp. 3d at 121; *In re NYT*, 585 F. Supp. 2d at 88 (noting that

warrant materials have been publicly available as matter of "routine historical practice"); *see

also, e.g.*, *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64–65 (4th Cir. 1989) ("Frequently—

probably most frequently—the warrant papers including supporting affidavits are open for

inspection by the press and public in the clerk's office after the warrant has been executed.").

And, as Judge Lamberth recognized in *In re NYT*, the fact that there is a common-law right of

access to warrant materials also meets the "experience" prong of the test.  585 F. Supp. 2d at 89

("Therefore, the fact that there is a common law tradition of access to warrant materials—which

is acknowledged by the government in this case—weighs strongly in favor of a First Amendment

qualified right of access to warrant materials."); *see also infra* Section I.B.  Experience,

therefore, counsels that warrant materials should be presumptively available to the public upon

---

[10] The court in *In re NYT*  held that there was no ongoing investigation although the government argued that it had not "formally closed"  the "Amerithrax" probe; the court noted that the government believed the 2001 anthrax attacks were the work of one person, acting alone, and that person had committed suicide.  585 F. Supp. 2d at 88 n.7.

the warrant's execution and return to the magistrate, and in any event no later than the point

where an indictment has been issued or a guilty plea entered.

Second, courts also have recognized several strong public policies that are served by

public access to warrant materials and that accordingly satisfy the "logic" prong of the test.  As

the Fifth Circuit recently observed, "the right of access promotes the trustworthiness of the

judicial process, curbs judicial abuses, and provides the public with a better understanding of the

judicial process, including its fairness."  *Sealed Search Warrants*, 868 F.3d at 395; see also *In re

NYT*, 585 F. Supp. 2d at 90 ("The fact that proceedings are open demonstrates to the public that

judicial processes are fair and that there is nothing to hide.").  This openness "'gives assurance

that established procedures are being followed and that deviations will become known' and

corrected."  *Id.* (citation omitted).  Particularly in high-profile criminal investigations such as this

one that deal with issues of the utmost urgency to our democracy, these public policy

considerations also support the First Amendment right of access to these materials after the

warrants' execution or after an indictment or guilty plea.

**B.     The Common-Law Right of Access Also Applies To Warrant Materials**

The Supreme Court has recognized that, under the common law, the public has a

qualified right "to inspect and copy public records and documents, including judicial records and

documents."  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).  This common-law

right is "broader, but weaker" than the First Amendment access right.  *In re WP II*, 201 F. Supp.

3d at 118 (citation omitted).   Courts in the D.C. Circuit have consistently held that warrant

materials are "judicial records" subject to this common-law right of access because they are

"central to a court's probable cause determination."  *Id.* at 129 (quoting *Custer Battlefield*, 658

F.3d at 1193); *see also In re NYT*, 585 F. Supp. 2d at 87 n.2 (noting that in that case government

had conceded that warrant materials are subject to common-law right of access).

.                                                    13

### C.      No Compelling Interest Justifies The Continued Blanket Sealing Of The Warrant Materials

To overcome the public's First Amendment right of access, a party opposing disclosure must show that keeping the records secret serves a compelling governmental interest and is narrowly tailored to serve that interest.  *Globe Newspaper*, 457 U.S. at 606-07; *In re NYT*, 585 F. Supp. 2d at 91.  The Supreme Court has directed that "[t]he interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered."  *Press-Enter. Co. v. Superior Court of California, Riverside Cty.*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*").

To be sure, it is possible that the government can articulate one or more compelling interests at stake here.  But it is difficult to comprehend how the continued categorical sealing of all of the Warrant Materials could properly be said to be narrowly tailored to serve any such interest, which can instead be served by targeted redactions.  Because of the First Amendment rights involved and the pressing public interest in the Russia Investigation, the government (or any other party seeking secrecy) should be required to show (1) what specific compelling interest is served by the sealing or redaction of each document and (2) why sealing, rather than redaction or other mitigation, is the most narrowly tailored means to serve that interest.  The Media Coalition respectfully submits that neither the government nor any other party will be able to justify blanket sealing of the Warrant Materials at issue here.

Perhaps the most obvious compelling interest the government might be expected to cite is the need to protect the integrity of an ongoing investigation.  *See, e.g.*, *Custer Battlefield*, 658 F.3d at 1195 n.5.  To be clear, the Media Coalition does not seek in any way to jeopardize or impede the Russia Investigation.  But "not every release of information contained in an ongoing criminal investigation file will necessarily affect the integrity of the investigation."  *Virginia*

.                                                            14

*Dep't of State Police v. Washington Post*, 386 F.3d 567, 579 (4th Cir. 2004) ("*Virginia State Police*") (government must provide "specific underlying reasons for the district court to understand how the integrity of the investigation reasonably could be affected by the release of such information" to justify sealing judicial records). Releasing the warrant materials already provided to Manafort, for example, would be unlikely to jeopardize an ongoing investigation because they have been provided to a key target of that investigation. Likewise, unsealing warrant materials directly related to those defendants who have been indicted or pleaded guilty would be unlikely to interfere with the investigation of those individuals. And the release of information that already has been widely publicized by the news media cannot threaten an ongoing criminal investigation. *Washington Post v. Robinson*, 935 F.2d 282, 291–92 (D.C. Cir. 1991) (government did not meet its burden to justify sealing plea agreement to protect ongoing investigation when plea already had been reported by news media). To the extent the Warrant Materials contain specific pieces of information that the government can show would compromise a specific aspect of the Russia Investigation if publicly disclosed at this time, those specific pieces of information can and should be redacted to allow for the maximum possible public access to these judicial records.

Other interests that the government might assert are at stake include the need to guard the secrecy of grand jury proceedings, shield the identities of confidential informants, and protect the Sixth Amendment rights of the accused. As for the latter concern, those considerations are not in play for the defendants who have already pleaded guilty. More broadly, "[i]n many cases, courts can accommodate these concerns by redacting sensitive information rather than refusing to unseal the materials entirely." *Custer Battlefield*, 658 F.3d at 1195 n.5. The Media Coalition does not object to redactions or withholdings that are narrowly tailored to serve these interests,

such as removing the names of and identifying information regarding confidential informants whose identifies, in fact, currently remain confidential.

Privacy considerations may in some limited circumstances qualify as a compelling interest, but it bears emphasis that "privacy and reputational concerns typically don't provide sufficient reason to overcome a qualified First Amendment right of access." *United States v. Loughner*, 769 F. Supp. 2d 1188, 1196 (D. Ariz. 2011). One situation in which privacy interests did rise to this level was presented in *In re WP II*, in which the court denied the Post's request to unseal warrant information related to an ancillary investigation involving the "sexual preferences and partners" of a cooperating witness in the investigation of campaign finance violations in the District. 201 F. Supp. 3d at 126-27. However, there is no indication that any of the Warrant Materials related to the Russia Investigation involve such highly intimate details that are not directly relevant to the core of the investigation – and, again, any such concerns could be adequately satisfied by redactions rather than indiscriminate sealing. Likewise, the privacy interests of potentially innocent third parties can be protected in the same way via targeted and specific redactions. *In re WP I*, 2016 WL 1604976, at *2.

Moreover, the nature of the Russia Investigation is such that many, if not most, of those potentially identified in the Warrant Materials are people who have a diminished privacy interest because they voluntarily sought  public office and/or positions in the maelstrom of a hotly contested presidential campaign. *See In re NYT*, 585 F. Supp. 2d at 93 n.14 ("injury to official reputation is an insufficient reason for repressing speech that would otherwise be free") (quoting *In re McClatchy Newspapers, Inc.,* 288 F.3d 369, 374 (9th Cir. 2002)). For example, federal prosecutors involved in convicting a sitting U.S. Senator on corruption charges that were later vacated because of prosecutorial misconduct did not have a privacy interest in sealing a report

about their misdeeds.  *In re Special Proceedings*, 842 F. Supp. 2d 232, 246 (D.D.C. 2012)

(noting that "the identity of the subjects was known from the outset of the investigation, the

matters under investigation were largely known to the public from the outset and arose from the

subject attorneys' conduct during the proceedings in a highly-publicized criminal trial").

Further, there is no compelling interest in protecting the "privacy" of facts that are already

public.  *Robinson*, 935 F.2d at 291-92; *Virginia State Police*, 386 F.3d at 579; *Loughner*, 769 F.

Supp. 2d at 1196.

In sum, insofar as the public record reveals, there is no apparent interest at stake

sufficiently compelling to justify the continued wholesale sealing of the Warrant Materials, and

any compelling interests that conceivably may be implicated could be served by narrowly

tailored redactions.

### D.    The Public's Interest In Disclosure Outweighs Any Need For Secrecy Of The Warrant Materials

In determining whether the strong common-law presumption in favor of public access

requires unsealing of a particular judicial record, a court must "balance the government's interest

in keeping the document secret against the public's interest in disclosure."  *In re WP II*, 201 F.

Supp. 3d at 118.  The D.C. Circuit has identified the following factors for courts to consider

where the common-law access right is implicated:

> (1) the need for public access to the documents at issue; (2) the public
> use of the documents; (3) the fact of objection and the identity of
> those objecting to disclosure; (4) the strength of the generalized
> property and privacy interests asserted; (5) the possibility of
> prejudice; and (6) the purposes for which the documents were
> introduced.

*In re NYT*, 585 F. Supp. 2d at 92 (citing *United States v. Hubbard,* 650 F.2d 293, 317-22 (D.C.

Cir. 1980)); *accord In re WP II*, 201 F. Supp. 3d at 118.  Here, an analysis of the five relevant

*Hubbard* factors[11] leads to the conclusion that the Warrant Materials should be released pursuant to the common-law access right.

The first and second factors weigh heavily – and conclusively – against continued secrecy. It is far from hyperbole to observe that the public interest in access to the Warrant Materials could not be higher. *See, e.g.*, *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971) ("[I]t can hardly be doubted that the constitutional guarantee [of free speech] has its fullest and most urgent application precisely to the conduct of campaigns for political office."). The Russia Investigation goes to the heart of the integrity of the political process, the potential corruption or other misconduct of the President of the United States and his closest advisers—or, as some of the President's supporters have argued, a corrupt conspiracy by some in law enforcement to harm the President—and the ability of the justice system to fairly and effectively investigate and, where necessary, prosecute any of these potential crimes. *See Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1092-93 (D.C. Cir. 2014) (recognizing "weighty public interest in shining a light on the FBI's investigation of major political corruption" and importance of materials that "shed light on how the FBI and the DOJ handle the investigation and prosecution of crimes that undermine the very foundation of our government"). Already, the President's former national security adviser and two former campaign aides have pleaded guilty to committing felonies, and his former campaign manager stands accused in two federal courts of crimes related to his work for Russia-connected individuals and organizations. And, of course, one of the ultimate questions in the Russia Investigation is whether the President himself unlawfully attempted to influence or obstruct the

---

[11] As Judge Lamberth explained, the sixth *Hubbard* factor was unique to that case, "in which a private party sought to prevent disclosure of documents recovered during a search." *In re NYT*, 585 F. Supp. 2d at 92 n.13.

probe.  The gravity and importance of this criminal investigation is second to none in our

nation's history, and therefore the public's interest in the transparency of that investigation is

paramount to all but the most crucial constitutional considerations.

The third and fourth factors – any objections to unsealing, the identity of the objectors,

and the strength of the objections – remains to be determined, but it is difficult to conceive of

circumstances that would be sufficient to overcome the public interest in release of the Warrant

Materials.  As discussed *supra*, the individuals most directly implicated by the Warrant Materials

either have already been indicted or pleaded guilty or are among the most powerful and public

political figures of our time.  Consequently, any legitimate objections they may raise could

adequately be addressed by targeted redactions.  Finally, the risk of prejudice to the investigation

or the prosecutions, while not unimportant, pales in comparison to the public interest and also

may be properly mitigated with any necessary redactions.

The public's common-law right to access the Warrant Materials, therefore, far outweighs

any countervailing considerations, and the blanket sealing of them should not continue.

## II.  The Public's First Amendment And Common Law Rights of Access Similarly Attach To The Manafort Records And Cannot Be Overcome Here

The foregoing analysis applies equally to the Manafort Records, although they are

addressed separately here because, unlike the Warrant Materials, they are judicial records listed

on the public docket of *United States v. Manafort*. The First Amendment right of access to

criminal proceedings "extends to many pre- and post-trial documents and proceedings,"

including the Manafort Records, which means that any party objecting to their disclosure must

demonstrate a compelling government interest in secrecy and that such secrecy is narrowly

tailored to that end.  *Special Proceedings*, 842 F. Supp. 2d at 239 (noting that First Amendment

access right applies to, *inter alia*, "pretrial documents").  In particular, the Media Coalition notes,

under the First Amendment, substantive documents and hearings (and transcripts thereof) in criminal cases generally may be sealed only if "specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 13-14 (internal marks and citation omitted). Here, the court made no such findings on the record justifying closure, instead issuing brief minute orders without providing to the public any analysis. *See, e.g.*, Minute Order, *United States v. Manafort*, No. 1:17-cr-00201-ABJ (D.D.C. Feb. 7, 2018) (granting motion to seal Dkt. 166); Minute Order, *United States v. Manafort*, No. 1:17-cr-00201-ABJ (D.D.C. Feb. 9, 2018) (continuing sealing of transcript of Feb. 7, 2018, hearing).

Additionally, as discussed more fully in Section I.B *supra*, the public has a qualified common-law right of access to judicial records – those court records that are "created and kept for the purpose of memorializing or recording an official action, decision, statement or other matter of legal significance, broadly conceived." *SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013) (citation omitted).  The D.C. Circuit has emphasized the "broadly conceived" factor, holding that documents whose seizure the defendant was challenging qualified as judicial records subject to the public access right even though their "contents were not specifically referred to or examined upon during the course of those proceedings and [their] only relevance to the proceedings derived from the defendants' contention that many of them were *not* relevant to the proceedings, *i.e.*, that the seizure exceeded the scope of the warrant." *Hubbard*, 650 F.2d at 316. *Hubbard* therefore is directly on point regarding the materials associated with the search and seizure warrants for Manafort's Alexandria residence and storage unit.

As outlined above, a court considering whether to provide public access to a particular judicial record uses the five-factor *Hubbard* balancing test. *In re NYT*, 585 F. Supp. 2d at 92.

The D.C. Circuit has instructed that "[a] seal may be maintained only 'if the district court, after considering the relevant facts and circumstances of the particular case, and after weighing the interests advanced by the parties in light of the public interest and the duty of the courts, concludes that justice so requires.'" *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665–66 (D.C. Cir. 2017) (quoting *In re Nat'l Broad. Co.*, 653 F.2d 609, 613 (D.C. Cir. 1981)).

The Manafort Records are "judicial records" subject to the common-law presumption of access because they are either records that the court considered in making a decision (such as the exhibit to the motion to withdraw) or, in the case of the hearing transcripts, memorialize substantive arguments presented to aid the court in making decisions and/or the court's decisions themselves. *See Am. Int'l Grp.*, 712 F.3d at 3-4 (documents at issue were not judicial records "because the district court made no decisions about them or that otherwise relied on them"). Therefore, they are presumptively open to the public.

Applying these principles to the Manafort Records, there is no apparent reason why they should not be unsealed as well. Under the First Amendment, there has been and can be no showing of a compelling interest sufficient to outweigh the public interest in these records, and continued wholesale sealing is not narrowly tailored to serve any such interest. For the same reasons discussed *supra* regarding the Warrant Materials, any compelling interests that do exist could be served by targeted redactions.

Turning to the common-law right, consideration of the five relevant *Hubbard* factors shows that the Manafort Records should be unsealed pursuant to the common-law right of access to judicial records. As with the Warrant Materials, the public need and use for the Manafort Records is of paramount importance, given the nature of the Manafort case as a prosecution

stemming from the Russia Investigation.  Again, the third and fourth factors, which are dependent upon the identity of any objectors to unsealing and the strength of their arguments, are impossible to precisely determine at this juncture, but suffice to say they are highly unlikely to outweigh the strong public interest in access to these records.  The fifth factor, the possibility of prejudice, also does not outweigh the public interest in this case; the Manafort case is the kind of high profile matter that will draw intense public scrutiny, and any potential taint to the jury pool can be addressed via *voir dire*.

The intense public interest in the cases stemming from the Russia Investigation greatly outweighs any factors supporting sealing, either under the First Amendment or the common law. The Manafort Records therefore should be released.  At a minimum, the court should make the kind of on the record findings required by *Press-Enterprise II* to justify further sealing.

## CONCLUSION

For all of the foregoing reasons, the Media Coalition respectfully requests that this Court grant its motion and enter an order unsealing the Warrant Materials and the Manafort Records.

Respectfully submitted,

Dated: April 25, 2018                 BALLARD SPAHR LLP


                                      By:    /s/JayWard Brown
                                      _____

                                      Jay Ward Brown (D.C. Bar No. 437686)
                                      brownjay@balladspahr.com
                                      Matthew E. Kelley (D.C. Bar No. 1018126)
                                      kelleym@ballardspahr.com
                                      BALLARD SPAHR LLP
                                      1909 K Street, NW
                                      Washington, D.C. 20006-1157
                                      T: (202) 508-1136
                                      F: (202) 661-2299

                                      *Counsel for The Associated Pres;, Cable*
                                      *News Network, Inc.; The New York Times*
                                      *Co.; POLITICO LLC; and WP Co., LLC,*
                                      *d/b/a the Washington Post*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**IN THE MATTER OF THE APPLICATION OF
THE ASSOCIATED PRESS; CABLE NEWS
NETWORK, INC.; THE NEW YORK TIMES
CO.; POLITICO LLC; AND WP CO., LLC, d/b/a
THE WASHINGTON POST FOR ACCESS TO
CERTAIN SEALED COURT RECORDS**

**Case No.**

**[PROPOSED] ORDER**

AND NOW, this ___ day of _____, 2018, upon consideration of the Motion for

Public Access to Sealed Court Records and the Memorandum of Points and Authorities in

support thereof, it is hereby ORDERED that the motion is GRANTED and the Clerk of the Court

shall unseal the Warrant Materials and Manafort Records as further ordered by the Court.

_____
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN THE MATTER OF THE APPLICATION OF THE ASSOCIATED PRESS; CABLE NEWS NETWORK, INC.; THE NEW YORK TIMES CO.; POLITICO LLC; AND WP CO., LLC, d/b/a THE WASHINGTON POST FOR ACCESS TO CERTAIN SEALED COURT RECORDS** | Case No. |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of April, 2018, I caused true and correct copies of the foregoing Motion for Public Access to Certain Sealed Court Records, along with true and correct copies of the Memorandum of Points and Authorities in support thereof, the proposed order, and the Corporate Disclosure Statement, to be served via electronic mail and U.S. Mail on the following:

Robert S. Mueller III
Andrew Weissmann
Greg D. Andres
Brandon Lang Van Grack
Jeannie Sclafani Rhee
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue, NW
Room B-103
Washington, DC 20530
(202) 616-0800
aaw@usdoj.gov
gda@usdoj.gov
bvg@usdoj.gov
jsr@usdoj.gov

*Counsel for the United States*

Kevin M. Downing
Law Office of Kevin M. Downing
601 New Jersey Avenue NW
Suite 620

Washington, DC 20001
(202) 754-1992
kevindowning@kdowninglaw.com

Thomas E. Zehnle
Law Office of Thomas E. Zehnle
601 New Jersey Avenue NW
Suite 620
Washington, DC 20001
(202) 368-4668
tezehnle@gmail.com

*Counsel for Paul J. Manafort, Jr.*

Thomas C. Green
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8069
Fax: (202) 736-8711
Email: tcgreen@sidley.com

*Counsel for Richard W. Gates, III*

Robert K. Kelner
Stephen Pierce Anthony
COVINGTON & BURLING LLP
One City Center
850 Tenth Street NW
Washington, DC 20001-4956
(202) 662-5503
rkelner@cov.com
santhony@cov.com

*Counsel for Michael T. Flynn*

Robert W. Stanley
Thomas M. Breen
BREEN & PUGH
53 W. Jackson Blvd.
Suite 1215
Chicago, IL 60604
(312) 360-1001
rstanley@breenpughlaw.com

*Counsel for George Papadopoulos*

Jeremy Lessem
LESSEM, NEWSTAT & TOOSON, LLP
3450 Cahuenga Blvd
Unit 102
Los Angeles, CA 90068
818-582-3087
jeremy@lnlegal.com

*Counsel for Richard Pinedo*

David Edward Mills
COOLEY, LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
(202) 776-2865
dmills@cooley.com

Laura Grossfield Birger
Nicholas Andrew Flath
William Jay Schwartz
COOLEY, LLP
114 Avenue of the Americas
46th Floor
New York, NY 10036
(212) 479-6079
lbirger@cooley.com
nflath@cooley.com
wschwartz@cooley.com

*Counsel for Alex van der Zwaan*

Eric A. Dubelier
Katherine Joanne Seikaly
REED SMITH LLP
1301 K Street, NW
Suite 1000 - East Tower
Washington, DC 20005
(202) 414-9291
edubelier@reedsmith.com
kseikaly@reedsmith.com

*Counsel for Concord Management and Consulting LLC*

By:   /s/ Jay Ward Brown

Jay Ward Brown (D.C. Bar No. 437686)
brownjay@balladspahr.com
Matthew E. Kelley (D.C. Bar No. 1018126)
kelleym@ballardspahr.com
BALLARD SPAHR LLP
1909 K Street, NW
Washington, D.C. 20006-1157
T: (202) 508-1136
F: (202) 661-2299

*Counsel for The Associated Press; Cable News Network, Inc.; The New York Times Co.; POLITICO, LLC; and WP Co., LLC, d/b/a/ the Washington Post*