**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| )<br>)<br>IN THE MATTER OF THE APPLICATION )<br>OF THE ASSOCIATED PRESS; CABLE )<br>NEWS NETWORK, INC.; THE NEW YORK )<br>TIMES CO.; POLITICO LLC; AND WP CO., )<br>LLC, D/B/A THE WASHINGTON POST )<br>FOR ACCESS TO CERTAIN SEALED )<br>COURT RECORDS )<br>)<br>) | Case No. 1:18-mc-41 (ABJ)<br><br>Judge Amy Berman Jackson |

## PAUL J. MANAFORT, JR.'S RESPONSE TO MOTION FOR PUBLIC ACCESS TO CERTAIN SEALED COURT RECORDS

Kevin M. Downing
(D.C. Bar #1013984)
601 New Jersey Avenue, N.W.
Suite 620
Washington, D.C.  20001
(202) 754-1992
kevindowning@kdowninglaw.com

Thomas E. Zehnle
(D.C. Bar #415556)
601 New Jersey Avenue, N.W.
Suite 620
Washington, D.C.  20001
(202) 368-4668
tezehnle@gmail.com

*Counsel for Paul J. Manafort, Jr.*

June 4, 2018

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 1

ARGUMENT ..................................................................................................................... 3

I.  The Court Should Deny the Media Coalition's Broad Request for All
    Search-Warrant Materials Related to Mr. Manafort ............................................. 4

    A.  The Media Coalition Is Not Entitled to the Search-Warrant Materials
        Under the First Amendment ..................................................................... 4

    B.  The Media Coalition Is Not Entitled to the Search-Warrant Materials
        Under the Common Law ........................................................................... 11

II. The Court Should Deny the Media Coalition's Request for Sealed Items in the
    Criminal Proceeding Pending in This Court Against Mr. Manafort ................................ 15

    A.  The Eastern District of Virginia Search-Warrant Materials Should
        Not Be Unsealed ...................................................................................... 16

    B.  The January 22 Hearing Transcript Should Not Be Unsealed ............................ 16

    C.  Materials Concerning Mr. Gates's Former Counsel's Motion To Withdraw
        as Counsel Should Not Be Unsealed ...................................................... 19

CONCLUSION .................................................................................................................. 21

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## CASES

\* *Balt. Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989) ...................................................5, 6, 7

*CBS Inc. v. Young*, 522 F.2d 234 (6th Cir. 1975) ........................................................17

*Comput. Prof'ls for Soc. Responsibility v. Secret Serv.*,
    No. 92-5140, 1993 WL 20050 (D.C. Cir. Jan. 5, 1993) ........................................6

*EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406 (D.C. Cir. 1996) ...........................12

*Franks v. Delaware*, 438 U.S. 154 (1978) ...................................................................10

*Gannett Co. v. DePasquale*, 443 U.S. 368 (1979) ...................................................9, 10

*Gentile v. State Bar of Nev.*, 501 U.S. 1030 (1991) ...................................................8, 9

*Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982) ...................................17

\* *Metlife, Inc. v. Fin. Stability Oversight Council*,
    865 F.3d 661 (D.C. Cir. 2017) ................................................................. *passim*

*In re Motions of Dow Jones & Co.*, 142 F.3d 496 (D.C. Cir. 1998) .............................12

*Neb. Press Ass'n v. Stuart*, 427 U.S. 539 (1976) ...........................................................9

*In re N.Y. Times Co.*, 828 F.2d 110 (2d Cir. 1987) .........................................................8

*In re N.Y. Times Co. for Access to Certain Sealed Court Records*,
    585 F. Supp. 2d 83 (D.D.C. 2008) .......................................................................7

\* *Press-Enter. Co. v. Superior Court of Cal. for the Cty. of Riverside*,
    478 U.S. 1 (1986) ..................................................................................... *passim*

*Press-Enter. Co. v. Superior Court of Cal., Riverside Cty.*,
    464 U.S. 501 (1984) ..............................................................................................9

*In re Providence Journal Co.*, 293 F.3d 1 (1st Cir. 2002) ............................................9

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) ...............................5, 17

\* *In re Search of Fair Fin.*, 692 F.3d 424 (6th Cir. 2012) ....................................5, 6, 7, 8

*In re Search Warrant for Secretarial Area Outside Office of Thomas Gunn*,
    855 F.2d 569 (8th Cir. 1988) .............................................................................6, 7

*SEC v. Am. Int'l Grp.*, 712 F.3d 1 (D.C. Cir. 2013) ....................................................12

*Sheppard v. Maxwell*, 384 U.S. 333 (1966)......................................................................9

*Spinelli v. United States*, 393 U.S. 410 (1969) ...............................................................10

\* *Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989)........................*passim*

*United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995) ....................................................19

\* *United States v. Brice*, 649 F.3d 793 (D.C. Cir. 2011) .............................................*passim*

*United States v. El-Sayegh*, 131 F.3d 158 (D.C. Cir. 1997) .............................................11

*United States v. Gurney*, 558 F.2d 1202 (5th Cir. 1977) ..................................................17

*United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) ..........................................9, 14

*United States v. Pirk*, 282 F. Supp. 3d 585 (W.D.N.Y. 2017) .........................................13

*United States v. Thornton*, 454 F.2d 957 (D.C. Cir. 1971).............................................10

*United States v. Valenti*, 987 F.2d 708 (11th Cir. 1993)..................................................17

*Wash. Legal Found. v. U.S. Sentencing Comm'n*,
   17 F.3d 1446 (D.C. Cir. 1994)..............................................................................12, 13

*Wash. Legal Found. v. U.S. Sentencing Comm'n*,
   89 F.3d 897 (D.C. Cir. 1996) .....................................................................................12

*Wash. Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991) ...................................................5

*In re WP Co.*, 201 F. Supp. 3d 109 (D.D.C. 2016)......................................................7, 11

## CONSTITUTIONAL PROVISIONS

\* U.S. CONST., amend. I..........................................................................................*passim*

\* U.S. CONST., amend. VI........................................................................................*passim*

## ADMINISTRATIVE MATERIALS

Office of the Deputy Att'y Gen., *Appointment of Special Counsel To Investigate Russian
   Interference with the 2016 Presidential Election and Related Matters* (May 17, 2017)...........1

## OTHER AUTHORITIES

Def.'s Mem. in Support of Mot. for Leave, *United States v. Manafort*,
   No. 18-cr-00083-TSE, Dkt. 57 (E.D. Va. May 11, 2018) .......................................13

Def.'s Mot. To Compel Prod. of Unredacted Affadavits,
*United States v. Manafort*, No. 17-cr-201-ABJ, Dkt. 242
(D.D.C. Mar. 28, 2018)........................................................................................3, 15

Def.'s Mot. To File Under Seal, *United States v. Manafort*,
No. 17-cr-201-ABJ, Dkt. 152 (D.D.C. Jan. 17, 2018)................................16, 18, 19

Def.'s Mot. To File Under Seal, *United States v. Manafort*,
No. 17-cr-201-ABJ, Dkt. 162 (D.D.C. Feb. 1, 2018) ...........................................19

Def.'s Mot. To File Under Seal, *United States v. Manafort*,
No. 17-cr-201-ABJ, Dkt. 165 (D.D.C. Feb. 6, 2018) ...........................................19

Def.'s Mot. To Supress Fruits of Search of Residence,
*United States v. Manafort*, No. 17-cr-201-ABJ, Dkt. 264-2
(D.D.C. Apr. 9, 2018) ...............................................................................................2

Def.'s Mot. To Supress Fruits of Search of Storage Unit,
*United States v. Manafort*, No. 17-cr-201-ABJ, Dkt. 257
(D.D.C. Apr. 6, 2018) ...............................................................................................2

Def.'s Mot. To Withdraw as Attorney, *United States v. Manafort*,
No. 17-cr-201-ABJ, Dkt. 161 (D.D.C. Feb. 1, 2018) ...........................................19

Indictment, *United States v. Manafort*, No. 17-cr-201-ABJ,
Dkt. 13 (D.D.C. Oct. 30, 2017)..................................................................................2

Carol D. Leonnig, Tom Hamburger & Rosalind S. Helderman,
*FBI Conducted Predawn Raid of Former Trump Campaign
Chairman Manafort's Home*, WASH. POST, Aug. 9, 2017......................................2

Order, *United States v. Manafort*, No. 17-cr-201-ABJ,
Dkt. 38 (D.D.C. Nov. 8, 2017).............................................................................3, 10

Order, *United States v. Manafort*, No. 17-cr-201-ABJ,
Dkt. 312 (D.D.C. May 29, 2018) .........................................................................3, 15

Protective Order Governing Discovery, *United States v. Manafort*,
No. 17-cr-201-ABJ, Dkt. 46 (D.D.C. Nov. 15, 2017) .........................................2, 15

Ben Riley-Smith, *Trump Campaign Aide Richard Gates 'Flips' and
Pleads Guilty in Russia Investigation*, THE TELEGRAPH
(Feb. 23, 2018, 8:58 PM), https://www.telegraph.co.uk/news/
2018/02/23/trump-campaign-aide-richard-gates-flips-pleads-guilty-russia/ ..........11

## INTRODUCTION

Paul J. Manafort, Jr., respectfully submits this opposition to the motion of The Associated Press; Cable News Network, Inc.; The New York Times Company; POLITICO LLC; and WP Co., LLC, d/b/a/ the Washington Post (collectively, the "Media Coalition") to unseal confidential information pertaining to Mr. Manafort and the criminal proceedings pending against him in this Court.   The Media Coalition's expansive motion should be denied.   The First Amendment and the common law recognize a ***qualified*** right to public access to certain materials in judicial proceedings, but that right is subject to a balancing of interests.   Here, whatever right of access may exist is outweighed by compelling interests counseling against disclosure.   The materials requested by the Media Coalition do not merely pertain to what is, according to the Special Counsel, an ongoing investigation; their disclosure would further imperil Mr. Manafort's Sixth Amendment right to a fair trial.   Indeed, some of the materials sought by the Media Coalition have been denied ***to Mr. Manafort***, despite his efforts to obtain them for his defense.   Other materials contain sensitive information relating to Mr. Manafort's finances, or personal information about Mr. Manafort's former co-defendant and business associate.   Neither the First Amendment nor the common law countenances the indiscriminate and far-reaching disclosure sought by the Media Coalition.

## BACKGROUND

On May 17, 2017, Acting Attorney General Rod J. Rosenstein appointed Robert S. Mueller III as Special Counsel to investigate "the Russian government's efforts to interfere in the 2016 presidential election."   Office of the Deputy Att'y Gen., *Appointment of Special Counsel To Investigate Russian Interference with the 2016 Presidential Election and Related Matters* (May 17, 2017).   Almost immediately, the Special Counsel turned his attention to Mr. Manafort, subjecting him to a slew of searches, seizures, and subpoenas over the course of several months.

For example, just ten days after his appointment, the Special Counsel applied for, obtained, and executed a search warrant for a storage unit owned by Mr. Manafort located in Alexandria, Virginia. *See United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C. Apr. 6, 2018), Dkt. 257, at 1-2. Two months later, the Special Counsel applied for, obtained, and executed an invasive, early-morning search warrant for Mr. Manafort's home in Alexandra, Virginia. Carol D. Leonnig, Tom Hamburger & Rosalind S. Helderman, *FBI Conducted Predawn Raid of Former Trump Campaign Chairman Manafort's Home*, WASH. POST, Aug. 9, 2017. To this day, however, many of the investigative actions taken by the Special Counsel against Mr. Manafort remain confidential.

On October 27, 2017, the Special Counsel signed an indictment charging Mr. Manafort and his former business partner, Richard Gates, with several offenses stemming from their former consulting work for Ukrainian politicians and a Ukrainian political party. *United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C. Oct. 27, 2017), Dkt. 13. Shortly thereafter, the Court entered a protective order governing all discovery materials provided by the Special Counsel to Mr. Gates and Mr. Manafort in connection with the criminal proceeding against them. *United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C. Nov. 15, 2017), Dkt. 46, at 1. The protective order prohibits Mr. Gates and Mr. Manafort from disclosing any discovery materials provided by the Special Counsel except to aid them in preparing their defense. *See id.*

During discovery, Mr. Manafort sought copies of the search warrants obtained by the Special Counsel against Mr. Manafort, along with supporting materials. The materials the Special Counsel provided Mr. Manafort were heavily redacted. For example, the affidavit accompanying the July 2017 search warrant of Mr. Manafort's home at one point contains more than 26 consecutive pages of complete redaction. *See United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C. Apr. 9, 2018), Dkt. 264-2, at 8-33.

In light of the extensive redactions, Mr. Manafort filed a motion in this Court seeking to compel production of "unredacted versions of the affidavits underlying the [Special Counsel's] searches and seizures" related to Mr. Manafort.  *United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C. Mar. 28, 2018), Dkt. 242, at 1.   After an *in camera* inspection of the unredacted affidavits, the Court denied Mr. Manafort's motion.  *United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C. May 29, 2018), Dkt. 312, at 4.

Mr. Manafort has not merely been denied access to some of the very materials the press now seeks.  The Court has also construed its order prohibiting public comment, *United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C. Nov. 8, 2017), Dkt. 38, at 2, to prevent him, personally, from commenting publicly on widely covered events, even to protest his innocence, *see, e.g.*, Tr. of Status Conference, at 12, *United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C. Feb. 28, 2018).  Mr. Manafort has since obeyed that court-ordered silence in the face of intensive and almost uniformly negative coverage that will be seen by almost any potential juror.

## ARGUMENT

The Media Coalition seeks to unseal two broad categories of material pertaining to Mr. Manafort and the criminal proceedings pending against him in this Court.  It seeks ***all*** search-warrant materials "related to" seven criminal actions pending in this Court, including *United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C.).[1]   And it seeks several sealed items on the

---

[1] *See* Mot. for Public Access to Certain Sealed Court Records, at 2; *see also id.* at 5 ("seek[ing] access [to] all warrants, applications, supporting affidavits, and returns relating to all search, seizure, or Stored Communications Act warrants pertaining to the [Special Counsel's] Russia Investigation").

docket in *United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C.).[2]  This Court should reject the Media Coalition's expansive requests for public access.

With respect to the search-warrant materials, the Special Counsel has asserted that those materials pertain to ongoing investigatory matters.  Court after court has rejected appeals under the First Amendment for public access to search-warrant materials connected to an ongoing investigation.  And any First Amendment right of access to those materials is overcome by a compelling interest in protecting Mr. Manafort's right under the Sixth Amendment to a fair trial by impartial jurors.  Similar considerations weigh strongly against recognizing a common-law right of access to the requested search-warrant materials.  The same is true of the sealed docket materials in *United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C.):  Any presumption of public access under the First Amendment or the common law is outweighed by countervailing interests, including Mr. Manafort's (and the judicial system's interest in guaranteeing his) fair-trial rights.

I.      **THE COURT SHOULD DENY THE MEDIA COALITION'S BROAD REQUEST FOR ALL SEARCH-WARRANT MATERIALS RELATED TO MR. MANAFORT**

The Media Coalition has no right to access all search-warrant materials pertaining to the Special Counsel's investigation of Mr. Manafort (and others).  And any such right is amply outweighed by the constitutional fair-trial interests this Court must safeguard.

A.      **The Media Coalition Is Not Entitled to the Search-Warrant Materials Under the First Amendment**

1.      *There Is No First Amendment Right of Access to Search-Warrant Materials That Pertain to an Ongoing Criminal Investigation*

The First Amendment protects a "qualified . . . right of public access," but only to "particular proceeding[s]" in a criminal case.  *Press-Enter. Co. v. Superior Court of Cal. for the*

---

[2] *See* Mot. for Public Access to Certain Sealed Court Records, at 3 (seeking "several items listed on the public docket in the prosecution of Manafort and Gates, No. 1:17-cr-00201-ABJ").

*Cty. of Riverside*, 478 U.S. 1, 9 (1986) (*Press-Enterprise II*).   A qualified right of access can "attach[ ]"only if the proceeding satisfies a two-part "test[ ] of experience and logic."   *Id.* at 9. First, there must be "an 'unbroken, uncontradicted history' of openness" for that proceeding. *United States v. Brice*, 649 F.3d 793, 795 (D.C. Cir. 2011) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980) (plurality opinion)).   Second, public access must "serve[ ] an important function of monitoring prosecutorial or judicial misconduct," *Wash. Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991), or otherwise "play[ ] a significant positive role in the functioning of the proceeding," *Brice*, 649 F.3d at 795.   The D.C. Circuit has applied that two-part experience-and-logic test to court documents and court proceedings alike.   *See Wash. Post*, 935 F.2d at 287-88 (applying the test to plea agreements).

The search-warrant materials sought by the Media Coalition do not pass the experience-and-logic test.   The Special Counsel has asserted that the materials requested by the Media Coalition pertain to ongoing investigatory matters.   *See* Gov't Resp. to Mot. for Public Access to Certain Sealed Court Records, at 5-6, 13.   At least three courts of appeals—the Fourth, Sixth, and Ninth—have held that there is no First Amendment right of public access to search-warrant materials insofar as they pertain to an ongoing investigation.   *Balt. Sun Co. v. Goetz*, 886 F.2d 60, 64-65 (4th Cir. 1989) ("[W]e hold that the press does not have a first amendment right of access to an affidavit for a search warrant."); *In re Search of Fair Fin.*, 692 F.3d 424, 433 (6th Cir. 2012) ("We conclude that there is no First Amendment right of access to documents filed in search warrant proceedings."); *Times Mirror Co. v. United States*, 873 F.2d 1210, 1218 (9th Cir. 1989) ("hold[ing] that members of the public have no First Amendment right . . . to obtain the documents relating to [search-warrant] proceedings[ ] while the investigation is ongoing but before indictments have been returned" and reserving "whether the public has a First

Amendment right of access to warrant materials after an investigation is concluded or after indictments have been returned").

Applying the experience-and-logic test, courts have routinely concluded that search-warrant materials meet neither prong.  As a matter of "experience," search-warrant materials historically have not always been open to the public.  *See Comput. Prof'ls for Soc. Responsibility v. Secret Serv.*, No. 92-5140, 1993 WL 20050, at *1 (D.C. Cir. Jan. 5, 1993) (per curiam) ("[T]here is no clear tradition of public access to search warrant materials related to an ongoing investigation."); *Balt. Sun*, 886 F.2d at 64 (concluding that "proceedings for the issuance of search warrants are not open"); *Fair Fin.*, 692 F.3d at 430 ("We find no evidence . . . of documents filed in search warrant proceedings historically being made open to the press and public" "after the related search is executed."); *Times Mirror*, 873 F.2d at 1214 ("In sum, we find no historical tradition of open search warrant proceedings and materials.").  And as a matter of "logic," "access would be detrimental to the search warrant application and criminal investigatory processes."  *Fair Fin.*, 692 F.3d at 433; *see also id.* at 432 (noting the "variety of ways in which the criminal investigatory process may be harmed by making documents filed in search warrant proceedings publicly available," even after "execution of the search"); *Times Mirror*, 873 F.2d at 1215 (concluding that any "positive role" that disclosure of search-warrant materials might have in warrant proceedings is "more than outweighed by the damage to the criminal investigatory process that could result").[3]

---

[3] The only court of appeals to have recognized a qualified First Amendment right of access to search-warrant materials ultimately refused public access because they pertained to an ongoing investigation.  *See In re Search Warrant for Secretarial Area Outside Office of Thomas Gunn*, 855 F.2d 569, 574 (8th Cir. 1988).  In that case, the Eighth Circuit found that search-warrant materials pass the experience-and-logic test, but held that "[t]he government has demonstrated that restricting public access to the[ ] documents is necessitated by a compelling government interest—the on-going investigation."  *Id.*  "There is a substantial probability," the court

Ignoring that broad consensus, the Media Coalition asserts that "warrant materials have long been presumptively public, usually upon the return of the executed warrant."  Mem. of Points & Authorities in Support of Mot. for Public Access to Certain Sealed Court Records, at 12.  That assertion is mistaken.  Two of the three cases relied upon by the Media Coalition involved requests for search-warrant materials that came ***after the close of the investigations*** to which the materials pertained.  *See In re WP Co.*, 201 F. Supp. 3d 109, 121-22 (D.D.C. 2016) (*WP Co. II*) (declining to "allow for public access to all warrants issued in connection with [certain ***now-closed investigations***" (emphasis added)); *In re N.Y. Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 88 (D.D.C. 2008) ("[a]pplying the 'experience' and 'logic' test . . . to the question of ***post-investigation*** warrant materials" (emphasis added)).  And the third case, *Baltimore Sun*, held that search-warrant materials are ***not*** historically open to the press.  886 F.2d at 64 (concluding that search-warrant materials "do[ ] not satisfy the first prong" of the experience-and-logic test).

Of course, it is not uncommon for search-warrant materials to become "open for inspection by the press and public . . . after the warrant has been executed."  *Baltimore Sun*, 886 F.2d at 64.  That the government "in ***some*** instances allow[s] documents filed after the execution of the search warrant to become public," however, is not "evidence of an historical tradition of accessibility to them," *Fair Fin.*, 692 F.3d at 431 (emphasis added), much less an "unbroken, uncontradicted history" of openness, *Brice*, 649 F.3d at 795.  The government "routinely

---

explained, "that the government's on-going investigation would be severely compromised if the sealed documents were released."  *Id.*   Other circuits have rejected the Eighth Circuit's conclusion that a First Amendment right of access attaches to search-warrant materials as "unpersuasive."  *Fair Fin.*, 692 F.3d at 433 n.3; *see also Times Mirror*, 873 F.2d at 1217 ("[W]e cannot agree with the Eighth Circuit's reasoning.").

obtain[s] sealing orders" on search-warrant materials when, as here, it "determines that it has legitimate interests in preventing disclosure." *Fair Fin.*, 692 F.3d at 430-31; *see also Times Mirror*, 873 F.2d at 1214. And "judicial officers have long respected the confidentialities involved in criminal investigations," "generally afford[ing] deference to the government's determinations on the need for secrecy." *Fair Fin.*, 692 F.3d at 431. That "longstanding practice" of maintaining search-warrant materials under seal even after execution of a search, *id.*, refutes the Media Coalition's claim of an established historical practice to the contrary. As the Special Counsel argues, no First Amendment right of access attaches to search-warrant materials connected to an ongoing criminal investigation.

2. *Any First Amendment Right of Access to Search-Warrant Materials Is Overcome by the Compelling Interest in Protecting Mr. Manafort's Fair-Trial Rights*

Even assuming that a First Amendment right of access attaches to search-warrant materials pertaining to an ongoing investigation and criminal proceeding, that right is "not absolute." *Press-Enterprise II*, 478 U.S. at 9; *see also In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987). A presumption of public access may be overcome if " '(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, th[e] compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest.' " *Brice*, 649 F.3d at 796. All three considerations weigh against disclosure here: The sealing of the search-warrant materials "serves [the] compelling interest," *id.*, of protecting Mr. Manafort's right under the Sixth Amendment to a "fair trial by 'impartial' jurors," *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1075 (1991) (quoting U.S. CONST., amend. VI). Disclosure of the search-warrant materials would assuredly exacerbate threats to Mr. Manafort's fair-trial rights. And alternatives to sealing the search-

warrant materials, such as disclosing them in redacted form, would not adequately protect Mr. Manafort's right to a fair trial.

1.      "An accused's Sixth Amendment right to a fair trial plainly rises to the level of a compelling interest." *In re Providence Journal Co.*, 293 F.3d 1, 13 (1st Cir. 2002) (citing *Press-Enter. Co. v. Superior Court of Cal., Riverside Cty.*, 464 U.S. 501, 508 (1984) (*Press-Enterprise I*)).  It is well established, after all, that "[n]o right ranks higher than the right of the accused to a fair trial." *Press-Enterprise I*, 464 U.S. at 508; *see also Gentile*, 501 U.S. at 1075 ("Few, if any, interests under the Constitution are more fundamental than the [Sixth Amendment] right to a fair trial by 'impartial' jurors . . . ."); *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 572 (1976) (Brennan, J., concurring) ("The right to a fair trial by a jury of one's peers is unquestionably one of the most precious and sacred safeguards enshrined in the Bill of Rights.").

Sealing the search-warrant materials safeguards Mr. Manafort's fair-trial rights by preventing negative press coverage that is almost certain to prejudice the prospective jury pool. "Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors," the Supreme Court has directed "trial courts [to] take strong measures to ensure that the balance is never weighed against the accused." *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966).  Thus, "to minimize the danger of an unfair trial by adverse publicity," "[t]he public has in the past been excluded, temporarily or permanently, from court proceedings or the records of court proceedings." *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980).  Indeed, "[c]losure of pretrial proceedings is often one of the most effective methods that a trial judge can employ to attempt to insure that the fairness of a trial will not be jeopardized by the dissemination of [prejudicial] information throughout the community before the trial itself has even begun." *Gannett Co. v. DePasquale*, 443 U.S. 368, 379 (1979).

2.      Mr. Manafort's fair-trial rights would unquestionably be "harmed" if the press were granted pre-trial access to search-warrant materials. *Brice*, 649 F.3d at 796. Pre-trial "publicity" can "undermine[ ]" "the right of the accused to a fair trial." *Press-Enterprise II*, 478 U.S. at 9; *see also Gannett*, 443 U.S. at 378 ("This Court has long recognized that adverse publicity can endanger the ability of a defendant to receive a fair trial.") (citing cases). As the Special Counsel acknowledges, media reports are often based on "half-understood facts[ ] or speculation." Gov't Resp. to Mot. for Public Access to Certain Sealed Court Records, at 15.

Here, the criminal proceedings pending against Mr. Manafort are already mired in a morass of damaging—and often untrue—press coverage. Unsealing the search-warrant materials would undoubtedly spawn additional misleading or false coverage of Mr. Manafort's case, further prejudicing the Washington, D.C. jury pool. The threats to Mr. Manafort's fair-trial rights would be particularly acute given that "'affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial.'" *United States v. Thornton*, 454 F.2d 957, 966 (D.C. Cir. 1971) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969), *abrogated on other grounds by Illinois v. Gates*, 462 U.S. 213 (1983)); *see also Gannett*, 443 U.S. at 378 ("Publicity concerning . . . proceedings at a pretrial hearing[ ] . . . could . . . inform potential jurors of inculpatory information wholly inadmissible at the actual trial."); *Franks v. Delaware*, 438 U.S. 154, 171 (1978) (acknowledging that affidavits in support of search warrants may be deemed valid even if they contain "mistake[s]," so long as any "falsehood[s]" are not made by the affiant "deliberate[ly]" or with "reckless disregard for the truth").

Compounding those grave impacts, Mr. Manafort is subject to an order of this Court forbidding him from "making statements to the media or in public settings that pose a substantial likelihood of material prejudice to this case." *United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C. Nov. 8, 2017), Dkt. 38, at 2. This Court has interpreted that order to prevent Mr.

Manafort from, for instance, making brief public statements "maintain[ing] [his] innocence" and reaffirming his "commitment to defend [himself] against the untrue piled up charges contained in the indictments against [him]."  Ben Riley-Smith, *Trump Campaign Aide Richard Gates 'Flips' and Pleads Guilty in Russia Investigation*, The Telegraph (Feb. 23, 2018, 8:58 PM), https://www.telegraph.co.uk/news/2018/02/23/trump-campaign-aide-richard-gates-flips-pleads-guilty-russia/; *see* Tr. of Status Conference, at 12, *United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C. Feb. 28, 2018).  If the Court continues to read the order in that capacious manner, public access to the requested search-warrant materials would leave Mr. Manafort defenseless against a reinvigorated onslaught of damaging and prejudicial press stories.

3.      Alternatives to sealing, such as disclosure in redacted form, would not adequately protect Mr. Manafort's fair-trial rights.  As the Special Counsel points out, there is "too great a risk . . . that the public would be able to decipher redactions," Gov't Resp. to Mot. for Public Access to Certain Sealed Court Records, at 16, and public speculation about redacted materials could give rise to false conclusions.  Even wholly "unredacted material would . . . invite damaging conjecture and speculation." *Id.*  Under these circumstances, maintaining the search-warrant materials under seal is the least restrictive means of protecting Mr. Manafort's fair-trial rights.  *See WP Co. II*, 201 F. Supp. 3d at 128 (concluding that "full closure of the sealed warrant materials . . . is the least restrictive means of protecting" "compelling privacy, reputational, and due process interests," in part because "even 'limited redactions would invite conjecture and speculation'" (citation omitted)).

**B.      The Media Coalition Is Not Entitled to the Search-Warrant Materials Under the Common Law**

The common law also recognizes a right of access that is "broader, but weaker" than the First Amendment right.  *United States v. El-Sayegh*, 131 F.3d 158, 160 (D.C. Cir. 1997).  The

threshold inquiry in determining "whether a document must be disclosed pursuant to the common law right of access" is "'whether the document sought is a "public record."'" *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 902 (D.C. Cir. 1996) (*Wash. Legal Found. II*) (quoting *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1451 (D.C. Cir. 1994) (*Wash. Legal Found. I*)).   "Public records"—and only "public records"—are generally subject to the common-law right of access.  *See Wash. Legal Found. I*, 17 F.3d at 1452.

Like the First Amendment right of access, however, the common-law right of access is "not absolute."  *SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013).  Even when a common-law right of access applies, a district court "'should proceed to balance the government's interest in keeping the document secret against the public's interest in disclosure.'" *Wash. Legal Found. II*, 89 F.3d at 902 (quoting *Wash. Legal Found. I*, 17 F.3d at 1451-52); *see also In re Motions of Dow Jones & Co.*, 142 F.3d 496, 504 (D.C. Cir. 1998) ("There is . . . no [common-law] right of access to 'documents which have traditionally been kept secret for important policy reasons.'" (quoting *Times Mirror*, 873 F.2d at 1219)).  "[T]o balance the interests presented by a given case," the D.C. Circuit has articulated a "six-factor test," under which a district court must consider "'(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.'" *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996)).

1.      Here, whether or not a common-law right of access attaches to the search-warrant materials requested—prior to trial and during an ongoing investigation—any common-law right

of access is overcome by "competing interests" weighing against disclosure.  *Metlife*, 865 F.3d at

665.   The Special Counsel has asserted a strong "interest in keeping the [search-warrant

materials] secret," *Wash. Legal Found. I*, 17 F.3d at 1451-52—to protect "open investigatory

matters," Gov't Resp. to Mot. for Public Access to Certain Sealed Court Records, at 17; *see also

id.* at 17-19.   That asserted interest in secrecy aligns with Mr. Manafort's interest in protecting

his Sixth Amendment right to a fair trial.   And that interest has regularly been recognized as

outweighing any public interest in disclosure.   *See, e.g.*, *United States v. Pirk*, 282 F. Supp. 3d

585, 602 (W.D.N.Y. 2017) ("The Government's stated need to maintain confidentiality due to

the ongoing nature of its investigation" "plainly outweighs any common law right of access.").

  2. The D.C. Circuit's six-factor test weighs heavily against public access.   First, the

public's interest in the search-warrant materials is limited, as the public generally is not entitled

to understand the details of a criminal investigation while it is, according to the Special Counsel,

ongoing.   *See* pp. 4-8, *supra*.

  Second, the public has not previously had access to the search-warrant materials, which

were filed under seal.   The public is aware only of the ***existence*** of an "unknown" number of

search warrants.   *See* Mot. for Public Access to Certain Sealed Court Records, at 2-3.

  Third, the parties with the most significant interests in the search-warrant materials object

to the unsealing of them.   Mr. Manafort objects on fair-trial grounds.   *See* pp. 8-11, *supra*.   And

the Special Counsel objects on the grounds that public access would undermine ongoing criminal

investigations.   *See* Gov't Resp. to Mot. for Public Access to Certain Sealed Court Records, at

17-19.

  Fourth, considerable reputational and privacy interests are at stake.   The search-warrant

materials contain personal information about Mr. Manafort, including "his home address, the

precise location of his storage unit, [and] passwords to his electronic devices."   *United States v.*

*Manafort*, No. 18-cr-00083-TSE (E.D. Va. May 11, 2018), Dkt. No. 57, at 2.  Such information, if made public, would invade the privacy interests of not only Mr. Manafort, but also his family. The search-warrant materials also likely implicate uncharged third parties whose reputations could be ruined by their mere association with a criminal investigation.  *See* Gov't Resp. to Mot. for Public Access to Certain Sealed Court Records, at 15 n.6.

Fifth, as discussed above, it is virtually certain that public access to the search-warrant materials would prejudice Mr. Manafort and further erode his fair-trial rights.  *See* pp. 8-11, *supra*.  The Special Counsel has also asserted that disclosure would pose a "substantial risk of prejudice" to the ongoing investigation, calling that risk the "most important[ ]" factor weighing against public access.  Gov't Resp. to Mot. for Public Access to Certain Sealed Court Records, at 18-19.

Sixth and finally, the search-warrant materials were introduced in this Court, well before any charges were filed, to obtain information that ***might*** be evidence of a wrongdoing.  The materials could have been proven untrue, at least in part, by information obtained in the searches. They also might not have led to any charges—or, if charges resulted, might not have been admissible at trial.  *Cf. Hubbard*, 650 F.2d at 321 ("It must be remembered that the documents here were not determined by the trial judge to be relevant to the crimes charged," nor were they "used in the subsequent 'trial.'").  The purpose for which the search-warrant materials were introduced therefore counsels strongly against public access.

3.       Finally, it bears emphasis that even Mr. Manafort has been denied access to some of the search-warrant materials that the Media Coalition seeks.  The Media Coalition's request encompasses "***all*** warrants, applications, supporting affidavits, and returns relating to all search, seizure, or Stored Communications Act warrants" pertaining to Mr. Manafort," not just "those materials already produced to Manafort."  *See* Mot. for Public Access to Court Records, at 5

14

(emphasis added).  But this Court has rejected Mr. Manafort's efforts to compel production of "unredacted versions of the warrant affidavits underlying the [Special Counsel's] searches and seizures in [that] case."  *United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C. Mar. 28, 2018), Dkt. 242, at 1; *see also United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C. May 29, 2018), Dkt. 312, at 4.  If Mr. Manafort's constitutional right to mount a defense is insufficient to warrant disclosure of these documents in the criminal prosecution that has been brought against him, then the press's purported common-law right to have the information is surely insufficient as well.

To the extent that the Media Coalition seeks those search-warrant materials that the Special Counsel has already provided Mr. Manafort, Mr. Manafort notes that—from the beginning of the criminal proceedings against him—he has been subject to a protective order prohibiting disclosure of those materials to the public.  *United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C. Nov. 15, 2017), Dkt. 46, at 1.  This Court presumably had sound reasons for issuing that protective order.  It should not now grant public access to materials it has long prohibited Mr. Manafort from disclosing.

## II.   THE COURT SHOULD DENY THE MEDIA COALITION'S REQUEST FOR SEALED ITEMS IN THE CRIMINAL PROCEEDING PENDING IN THIS COURT AGAINST MR. MANAFORT

The Media Coalition also seeks access to several sealed items on the public docket in *United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C.).  Two of the sealed docket items disclose information related to search warrants filed in the Eastern District of Virginia.  Another sealed docket item is a hearing transcript pertaining to Mr. Manafort's conditions of release.  The remaining sealed docket materials are two hearing transcripts and an exhibit, all involving a motion by Mr. Gates's former attorneys to withdraw as Mr. Gates's counsel.  The request for access to those sealed docket items should be denied as well.

### A.    The Eastern District of Virginia Search-Warrant Materials Should Not Be Unsealed

The Media Coalition's request for the Eastern District of Virginia search-warrant materials should be denied for substantially the same reasons as its request for all other search-warrant materials.  *See* pp. 4-15, *supra*.  Although the Special Counsel does not oppose the unsealing of the Eastern District of Virginia materials, provided appropriate redactions are made, the Special Counsel asserts that they pertain to an "ongoing investigation."  Gov't Resp. to Mot. for Public Access to Certain Sealed Court Records, at 20.  A First Amendment right of access does not attach to search-warrant materials connected to ongoing investigations.  *See* pp. 4-8, *supra*.  Even if a right of access attaches, the Special Counsel's acquiescence in disclosure does not alter the inimical effects that public access would have on Mr. Manafort's fair-trial rights. *See* pp. 8-11, *supra*.  And any common-law right of access to the search-warrant materials would be overcome by the weighty considerations counseling against public access set forth above.  *See* pp. 12-15, *supra*.

### B.    The January 22 Hearing Transcript Should Not Be Unsealed

The January 22 hearing pertained to a motion by Mr. Manafort for reconsideration of his conditions of release.  *See United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C. Jan. 17, 2018), Dkt. 152.  Mr. Manafort sought, and this Court granted, permission to file the motion under seal to "protect[]" the "identification and analysis of [Mr. Manafort's] financial assets," which included "private information of [Mr. Manafort] and non-parties," "the names of financial institutions where deposits are located[,] and details about the types and amounts of assets and liabilities." *Id.* at 2.  Neither the First Amendment nor the common law supports unsealing such materials so as to provide public access.

Under the First Amendment, the Media Coalition's request for a transcript of the hearings fails the experience-and-logic test.  It is doubtful that there is an "unbroken, uncontradicted history" of openness, *Brice*, 649 F.3d at 795, with respect to the requested transcript.  Although courts do not appear to have considered the historical status of hearings on conditions for release, trial courts have long enjoyed broad discretion to employ *in camera* proceedings.  *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982) (noting "the traditional authority of trial judges to conduct *in camera* conferences"); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 598 n.23 (1980) (Brennan, J., concurring) ("[T]he presumption of public trials is, of course, not at all incompatible with reasonable restrictions imposed upon courtroom behavior in the interests of decorum."); *United States v. Valenti*, 987 F.2d 708, 713 (11th Cir. 1993) (noting the "long recognized authority of a trial court to conduct bench conferences outside of public hearing"); *United States v. Gurney*, 558 F.2d 1202, 1210 (5th Cir. 1977) ("[B]ench conferences between judge and counsel outside of public hearing are an established practice, . . . and protection of their privacy is generally within the court's discretion.").  And proceedings have routinely been sealed for a variety of reasons: for example, to protect "sensitive details concerning [a] victim," *Globe Newspaper*, 457 U.S. at 609 n.25; " 'to avoid injury to the parties by reason of prejudicial or inflammatory publicity,' " *Gurney*, 558 F.2d at 1210 (quoting *CBS Inc. v. Young*, 522 F.2d 234, 241 (6th Cir. 1975)); or even to promote "the interests of [courtroom] decorum," *Richmond Newspapers*, 448 U.S. at 598 n.23 (Brennan, J., concurring).  Sealing a hearing that broaches a criminal defendant's sensitive financial information relevant to his conditions for release is entirely consistent with that historical practice; there certainly is no unbroken history of such information being made public.[4]

---

[4] To the extent that there is any ambiguity about the Court's reasons for sealing the hearing on

In any event, public access would not play "a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8.  The only purported benefit to public access identified by the Media Coalition is a general public interest in the "Russia Investigation" because it concerns "the integrity of the political process, the potential corruption or other misconduct of the President of the United States and his closest advisers[,] . . . and the ability of the justice system to fairly and effectively investigate . . . any of these potential crimes."  Mem. of Points & Authorities in Support of Mot. for Public Access to Certain Sealed Court Records, at 18.  But that asserted interest is not served by publicizing sensitive financial information about Mr. Manafort that is relevant principally to his conditions of release.  The Media Coalition thus has no First Amendment right of access to the January 22 sealed hearing on Mr. Manafort's motion for reconsideration of his conditions of release.  And for the reasons given above, any qualified First Amendment right of access would be overcome by the compelling interest in protecting Mr. Manafort's fair-trial rights and the privacy interests of innocent third parties.  *See* pp. 8-11, *supra*.

Any common-law right of access to the January 22 sealed hearing is outweighed by the likely harms of disclosure.  Mr. Manafort has asserted strong "property and privacy interests," *Metlife*, 865 F.3d at 665, in the financial information discussed at that hearing—property and privacy interests that may extend to "non-parties," including Mr. Manafort's "wife and . . . daughter," *see United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C. Jan. 17, 2018), Dkt. 152, at 2.  Those property and privacy interests are not, as the Media Coalition asserts, "diminished" by virtue of the fact that Mr. Manafort "sought public office and/or positions in the maelstrom of

---

Mr. Manafort's motion for reconsideration of his conditions on release, the Court can and should make "on the record findings . . . demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *Press-Enterprise II*, 478 U.S. at 13-14.

a hotly contested presidential campaign."  Mem. of Points & Authorities in Support of Mot. for Public Access to Certain Sealed Court Records, at 16.  In working on the presidential campaign of Donald J. Trump for six months, Mr. Manafort did not relinquish to the public his privacy interests in, among other things, "the names of financial institutions where deposits are located and details about the types and amounts of assets and liabilities."  *United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C. Jan. 17, 2018), Dkt. 152, at 2.

Conversely, the "need for public access" to financial information related to Mr. Manafort's conditions for release, *Metlife*, 865 F.3d at 665, is so minimal as to border on non-existent.  It is unclear how, if at all, that sealed financial information, separate and apart from any financial information about Mr. Manafort that is already public, relates to the "Russia Investigation" and the "integrity of the political process."  Mem. of Points & Authorities in Support of Mot. for Public Access to Certain Sealed Court Records, at 18.  "[T]he privacy interests of those resisting disclosure" thus strongly countervail any public interest in favor of disclosure.  *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995).

### C.   Materials Concerning Mr. Gates's Former Counsel's Motion To Withdraw as Counsel Should Not Be Unsealed

On February 1, 2018, in the then-joint criminal proceeding pending against Mr. Manafort and Mr. Gates, then-counsel for Mr. Gates moved to withdraw as Mr. Gates's counsel.  *See United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C. Feb. 1, 2018), Dkt. 161.  Mr. Gates's then-counsel provided the reasons for seeking to withdraw in a separate exhibit ("Withdrawal Exhibit"), which he moved to file under seal on the ground that it contained "private information regarding Mr. Gates" that "would potentially be prejudicial to [Mr. Gates] as well as embarrassing."  *United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C. Feb. 1, 2018), Dkt. 162; *see also United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C. Feb. 6, 2018), Dkt. 165.  This

Court granted the motion to file the Withdrawal Exhibit under seal.  It then conducted sealed *ex parte* hearings on the motion to withdraw as counsel on February 7, 2018, and February 14, 2018.  Minute Order, *United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C. Feb. 22, 2018); Minute Entry, *United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C. Feb. 7, 2018); Minute Entry, *United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C. Feb. 14, 2018).  The Special Counsel does not have access to the sealed transcripts of those *ex parte* hearings, *see* Gov't Resp. to Mot. for Public Access to Certain Sealed Court Records, at 20, and it is unclear whether the Special Counsel has access to the Withdrawal Exhibit either.

Once again, any First Amendment right of public access is overcome by the compelling interest in safeguarding Mr. Manafort's fair-trial rights.  *See* pp. 8-11, *supra*.  Although Mr. Manafort is not the direct subject of the materials sought by the Media Coalition, there can be no denying the tightly interwoven nature of Mr. Gates's and Mr. Manafort's defenses.  Mr. Gates and Mr. Manafort were charged on the same day, in the same indictment, as co-conspirators.  At the time Mr. Gates's former attorneys moved to withdraw as his counsel, Mr. Gates and Mr. Manafort were still co-defendants.  Any information that "would potentially be prejudicial to [Mr. Gates]" would be potentially prejudicial to Mr. Manafort as well.  Even the Special Counsel understands the Withdrawal Exhibit and the related hearing transcripts to have been "sealed to protect Gates's ***and Manafort's*** interests."  Gov't Resp. to Mot. for Public Access to Certain Sealed Court Records, at 20 (emphasis added).

Any common-law right is defeated by similar considerations.  Disclosure of the materials related to the motion to withdraw would pose a substantial "possibility of prejudice," *Metlife*, 865 F.3d at 665, to Mr. Manafort's fair-trial rights.  Indeed, it would undoubtedly generate damaging media speculation about Mr. Gates and Mr. Manafort—precisely the sort of speculation that Mr. Manafort has been prohibited from addressing.  Meanwhile, any "need for

public access," *id.*, to information about Mr. Gates's former counsel's reasons for withdrawing as counsel would seem far-removed from the Media Coalition's asserted public interest in "the integrity of the political process" and other closely related matters, Mem. of Points & Authorities in Support of Mot. for Public Access to Certain Sealed Court Records, at 17.

## <u>CONCLUSION</u>

The Court should deny the Media Coalition's requests for public access.


Dated:   June 4, 2018                                   Respectfully submitted,
         Washington, D.C.


                                                        /s/ Kevin M. Downing
                                                        Kevin M. Downing
                                                        (D.C. Bar #1013984)
                                                        601 New Jersey Avenue, N.W.
                                                        Suite 620
                                                        Washington, D.C.  20001
                                                        (202) 754-1992
                                                        kevindowning@kdowninglaw.com

                                                        /s/ Thomas E. Zehnle
                                                        Thomas E. Zehnle
                                                        (D.C. Bar #415556)
                                                        601 New Jersey Avenue, N.W.
                                                        Suite 620
                                                        Washington, D.C.  20001
                                                        (202) 368-4668
                                                        tezehnle@gmail.com

                                                        *Counsel for Paul J. Manafort, Jr.*