**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN THE MATTER OF THE APPLICATION OF
THE ASSOCIATED PRESS; CABLE NEWS
NETWORK, INC.; THE NEW YORK TIMES CO.;
POLITICO LLC; AND WP CO., LLC, d/b/a THE
WASHINGTON POST FOR ACCESS TO
CERTAIN SEALED COURT RECORDS

Case No. 1:18-MC-00041-ABJ

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**MOTION FOR PUBLIC ACCESS TO CERTAIN SEALED COURT RECORDS**

BALLARD SPAHR LLP

Jay Ward Brown (D.C. Bar No. 437686)
brownjay@balladspahr.com
Matthew E. Kelley (D.C. Bar No. 1018126)
kelleym@ballardspahr.com

1909 K Street, NW
Washington, D.C. 20006-1157
T: (202) 508-1136
F: (202) 661-2299

*Counsel for The Associated Press; Cable News*
*Network, Inc.; The New York Times Co.; POLITICO*
*LLC; and WP Co., LLC, d/b/a the Washington Post*

# TABLE OF CONTENTS

**Page**

I.  The Media Coalition Has Established That The First Amendment And Common-Law Rights of Access Apply To The Records They Seek....................................................2

II. Neither The Special Counsel Nor Manafort Has Made The Showings Necessary To Overcome The Public's Access Rights To The Warrant Materials ............................6

   A.  The Special Counsel's and Manafort's Objections Are Insufficient to Overcome the First Amendment Right of Access ....................................................7

   B.  The Special Counsel's and Manafort's Objections Do Not Overcome the Common-Law Access Right ..............................................................................12

   C.  The Court Should Either Order The Warrant Materials Unsealed Subject To Specific Permitted Redactions, Or Conduct Its Own Review To Determine The Propriety Of Unsealing ...............................................................13

III. The Court Should Unseal All Of The Manafort Records ..................................14

CONCLUSION...........................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Application of Leopold to Unseal Certain Elec. Surveillance Applications & Orders*,
  2018 WL 1129660 (D.D.C. Feb. 26, 2018) ..............................................................................3

\* *In re Application of New York Times Co. for Access to Certain Sealed Court Records*,
  585 F. Supp. 2d 83 (D.D.C. 2008) ................................................................................ *passim*

\* *In re Application of WP Co. LLC*,
  201 F. Supp. 3d 109 (D.D.C. 2016) ..................................................................................6, 13

\* *In re Application of WP Co. LLC*,
  2016 WL 1604976 (D.D.C. Apr. 1, 2016) ..........................................................................3, 4

*In re Email Account Maintained on Computer Servers Operated by Google, Inc.*,
  946 F. Supp. 2d 67 (D.D.C. 2013) ........................................................................................5

*Metlife, Inc. v. Fin. Stability Oversight Council*,
  865 F.3d 661 (D.C. Cir. 2017) .............................................................................................12

\* *Press-Enterprise Co. v. Superior Court*,
  478 U.S. 1 (1986) .......................................................................................................9, 10, 16

*Press-Enterprise Co. v. Superior Court*,
  464 U.S. 501 (1984) ...............................................................................................................7

*United States v. Brice*,
  649 F.3d 793 (D.C. Cir. 2011) ..............................................................................................7

\* *United States v. Hubbard*,
  650 F.2d 293 (D.C. Cir. 1980) ...................................................................................4, 12, 13

*United States v. Sealed Search Warrants*,
  868 F.3d 385 (5th Cir. 2017) .............................................................................................5, 6

*Va. Dep't of State Police v. Wash. Post*,
  386 F.3d 567 (4th Cir. 2004) .................................................................................................9

*Washington Post v. Robinson*,
  935 F.2d 282 (D.C. Cir. 1991) ...............................................................................................5

The Media Coalition, the Special Counsel and Paul Manafort agree that the Russia Investigation is a matter of significant public concern, that the news media serve an important public interest by reporting information regarding that probe, and that the investigation must not be impeded.  The Special Counsel also agrees that at least some of the records the Media Coalition seeks may be released without impeding the investigation.  The issue for the Court to resolve, then, is how to strike the balance among three compelling interests: the public's rights of access to the records the Media Coalition seeks, the Special Counsel's interest in safeguarding the integrity of the Russia Investigation, and Manafort's Sixth Amendment right to a fair trial.

In their responsive briefs, Manafort and the Special Counsel both contend that the public has no First Amendment right to search warrant materials related to an ongoing investigation, and that, even if the public did, the interests in protecting the ongoing investigation and Manafort's Sixth Amendment right overcome any First Amendment or common-law right of access.  As demonstrated in the Media Coalition's opening brief, however, judges in this district repeatedly have recognized that the public has qualified First Amendment and common-law rights of access to search warrant materials.  The only open question is at what point those rights attach.  Both experience and logic counsel that the point of attachment either is when the warrants are returned to the issuing court or, at the latest, when an indictment or criminal information is filed.  Moreover, the Special Counsel's invocation of an ongoing criminal investigation and Manafort's invocation of his fair trial right as complete bars to release of any of the Warrant Materials at issue here sweep far too broadly and lack sufficient specifics to overcome the public's qualified rights of access to them.  As for the materials referred to on this motion as the Manafort Records, Manafort likewise fails to make the specific showing required

to justify continued sealing, and the Special Counsel agrees that at least some of the Manafort Records may be released while taking no position regarding other of the Manafort Records.

This Court can and should make an independent determination regarding whether the Warrant Materials and Manafort Records the Coalition seeks should be released, where necessary with redactions to protect the ongoing investigation and the other legitimate interests invoked by Manafort and the Special Counsel.

## I.     The Media Coalition Has Established That The First Amendment And Common-Law Rights of Access Apply To The Records They Seek

Neither the Special Counsel nor Manafort have overcome the Media Coalition's showing that the Warrant Materials are subject to First Amendment and common-law rights of public access in the first instance.[1]  The parties agree that the correct analysis regarding whether there is a qualified right of access to the Warrant Materials under the First Amendment is the "experience and logic test."  Gov't's Resp. to Mot. for Public Access to Certain Sealed Court Records ("Gov't Resp.") at 9 (Dkt. 9); Paul J. Manafort, Jr.'s Resp. to Mot. for Public Access to Certain Sealed Court Records ("Manafort Resp.") at 5 (Dkt. 11); Mem. of Points and Authorities in Support of Mot. for Public Access to Certain Sealed Court Records ("Mem.") at 11-12 (Dkt. 1-1).  To resolve that inquiry, the Court must affirmatively answer "(1) whether the place and process have historically been open to the press and general public, and (2) whether 'public access plays a significant positive role in the functioning of the particular process in question.'" Mem. at 11 (quoting *In re Application of New York Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 87 (D.D.C. 2008) ("*In re NYT*") (additional citations omitted)).

---

[1] There is no dispute that the rights of access apply in the first instance to the Manafort Records.

As the Media Coalition noted in its opening Memorandum, courts in this District have recognized a First Amendment-based right of public access to search warrant materials.  Mem. at 11-13 (citing, *inter alia*, *In re Application of WP Co. LLC*, 2016 WL 1604976, at *2 (D.D.C. Apr. 1, 2016) ("*In re WP I*"); *In re NYT*, 585 F. Supp. 2d at 87).   However, there is no binding precedent from the District of Columbia Circuit regarding the precise issue here: whether the public's right of access to warrant materials attaches upon the warrant's execution and return to the issuing court or after the subject or target of the warrant has been indicted or pleaded guilty. Mem. at 10-13.  In arguing there is no First Amendment-based right of access to search warrant materials when those materials are related to an ongoing investigation, Gov't Resp. at 7-14; Manafort Resp. at 4-8, the Special Counsel and Manafort sidestep precedent and practice in this District.

Regarding the "experience" prong of the analysis, the Special Counsel incorrectly asserts that "'no evidence' supports the conclusion that search warrant materials have 'historically being [sic] made open to the press and public' after execution."  Gov't Resp. at 10; *see also* Manafort Resp. at 5-7 (relying on out-of-circuit authority to assert existence of "broad consensus" against First Amendment right of access to warrant materials).  In fact, in this district, the opposite is true.  Judges of this court repeatedly have recognized that, as Judge Lamberth put it a decade ago, "routine historical practice countenances in favor of a qualified First Amendment right of access to warrant materials [because] warrant applications and receipts are routinely filed with the clerk of court without seal."  *In re NYT*, 585 F. Supp. 2d at 88; *see also In re WP I*, 2016 WL 1604976, at *2 (same).[2]

_____

[2] As the Special Counsel notes, Gov't Resp. at 10-11, Judge Howell recently held that there is no First Amendment right of access to Stored Communications Act ("SCA") and pen register/trap and trace ("PR/TT") warrant materials.  *In re Application of Leopold to Unseal Certain Elec.*

The Special Counsel and Manafort attempt to minimize the import of this precedent by noting, correctly, that these cases involve access to warrant materials after the conclusion of the relevant investigations.  Gov't Resp. at 11-12; Manafort Resp. at 7.  That those cases involved requests for access that were *made* after the conclusion of the investigations, however, says nothing about whether or when the right of access attaches.  Indeed, those courts expressly disclaimed any holding regarding whether the qualified First Amendment right of access applied at an earlier stage.  *E.g.*, *In re NYT*, 585 F. Supp. 2d at 90 n.10 (stating that court was deciding "only the narrow issue" of whether right applied to warrant materials after investigation's conclusion, not whether right attached during ongoing investigations); *see also In re WP I*, 2016 WL 1604976, at *2 n.2 (noting "the present application seeks only warrant materials related to the now-closed Campaign Finance Investigations").[3]

Moreover, then-Chief Judge Lamberth was so disturbed by what he viewed as improper sealing of warrant materials by the Clerk's office that he issued an order mandating the creation of a page on the court's website "where all search warrants and arrest warrants will be publicly available after execution, unless a separate sealing order is entered to redact all or portions when the government makes the showing required by *United States v. Hubbard*, 650 F.2d 293 (D.C.

---

*Surveillance Applications & Orders*, 2018 WL 1129660, at *14-15 (D.D.C. Feb. 26, 2018). Judge Howell specifically limited that holding to SCA ant PR/TT warrants because those materials are not "analogous to traditional search warrants issued under Rule 41 of the Federal Rules of Criminal Procedure" and do not share "search warrants' *judicially-recognized history of openness*." *Id.* (emphasis added).

[3] As the Media Coalition noted in its opening brief, Mem. at 15, those portions of the Warrant Materials relating to Alex van der Zwaan, who has pleaded guilty and been sentenced, and Richard Gates, who also has pleaded guilty, are almost certain to include information whose release would neither impede the ongoing investigation nor affect Manafort's fair trial right. Because neither van der Zwaan nor Gates has objected to the release of Warrant Materials relating to them, and because both have pleaded guilty, the public interest in those materials far outweighs any interests asserted by the Special Counsel or Manafort.

Cir. 1980) and *Washington Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991)." *In re Email Account Maintained on Computer Servers Operated by Google, Inc.*, 946 F. Supp. 2d 67, 69 (D.D.C. 2013). The Special Counsel and Manafort acknowledge the fact that prosecutors must obtain sealing orders to shield warrant materials from public access. Gov't Resp. at 10; Manafort Resp. at 7-8. But their reliance on this practice as evidence that warrant materials historically have been treated as secret, *id.*, Manafort Resp. at 7-8, turns logic on its head. There would be no need to file a motion to seal search warrant materials unless those materials were presumptively public in the first instance. The historical practice in this district is that warrant materials have been publicly available upon their return, further supporting the "experience" prong of the relevant analysis.

For the "logic" prong of the analysis, the Special Counsel and Manafort argue that public access to warrant materials would be harmful even after a warrant has been returned and an indictment or information filed because information harmful to an ongoing investigation could be revealed. Gov't Resp. at 10-13; Manafort Resp. at 6.[4] That legitimate concern can and should be addressed on a case-by-case basis when considering whether to seal (or unseal) warrant materials, but that concern cannot be used to support an argument that there is no qualified access right in the first instance. *C.f. United States v. Sealed Search Warrants*, 868 F.3d 385, 390-91 (5th Cir. 2017) (sealing of warrant materials must be assessed on case-by-case basis pursuant to common-law right of access). As Judge Lamberth recognized, public access to warrant materials allows for public oversight of the criminal justice system and "serves as a

---

[4] Contrary to the Special Counsel's suggestion, the Media Coalition is not contending that an ongoing criminal investigation should "be conducted with the same openness as a criminal trial." Gov't Resp. at 6-7. The Media Coalition is not seeking contemporaneous access to warrant *proceedings*, *i.e.*, the government's application for a warrant and the court's evaluation of that application, but, rather, access to warrant materials submitted to the court *after* their execution.

check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police." *In re NYT*, 585 F. Supp. 2d at 90.  Especially regarding the Russia Investigation, which the President of the United States and others contend is illegitimate, the public is entitled to that oversight.  In short, the public unquestionably has a qualified First Amendment-based right of access to warrant materials as a matter of both experience and logic. *See* Mem. at 11-13.

The Special Counsel also briefly argues that the qualified common-law right of access to court records should not apply to search warrant materials.  Gov't Resp. at 16.  As the Media Coalition established in its Memorandum, however, courts in this district have held that warrant materials are judicial records subject to the common-law access right.  Mem. at 13. Although courts in this district have reserved the question of whether the common-law right applies to warrant materials during ongoing investigations, as the Special Counsel acknowledges, the Fifth Circuit recently held that this common-law access right applies in this circumstance, Gov't Resp. at 17 (citing *In re Application of WP Co. LLC*, 201 F. Supp. 3d 109, 129 & n.10 (D.D.C. 2016) ("*In re WP II*") and *Sealed Search Warrants*, 868 F.3d at 395-96), and therefore unsealing must be decided on a case-by-case basis during ongoing investigations under the common law right of access as well.

## II. Neither The Special Counsel Nor Manafort Has Made The Showings Necessary To Overcome The Public's Access Rights To The Warrant Materials

All parties agree that access rights under the First Amendment and the common law can be overcome only when necessary to protect compelling government or individual interests.  *See* Mem. at 14-18; Gov't Resp. at 14-18; Manafort Resp. at 8-15.  Although the Special Counsel and Manafort invoke several legitimate interests – chief among them, the need to protect the integrity of the Russia Investigation and Manafort's criminal trials – they treat these interests as

talismanic justifications for blanket sealing of all of the Warrant Materials, without explaining the particular reasons why these interests require the continued sealing of specific information. *See* Gov't Resp. at 14-16; Manafort Resp. at 8-11.  Because they are conclusory and categorical, the arguments by the Special Counsel and Manafort are of no help to the Court in making the specific findings required to enable meaningful review by an appellate court.  *See Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*").

### A.    The Special Counsel's and Manafort's Objections Are Insufficient to Overcome the First Amendment Right of Access

The First Amendment-based access right may be overcome only where sealing serves a compelling government interest and is narrowly tailored to serve that interest.  Mem. at 14; *In re NYT*, 585 F. Supp. 2d at 91.  *See also* Gov't Resp. at 14 (discussing alternative formulation that sealing is allowed "if (1) a 'compelling interest' exists; (2) disclosure would create a 'substantial probability of harm to that interest; and (3) alternatives would not 'adequately protect the compelling interest.'") (quoting *United States v. Brice*, 649 F.3d 793, 796 (D.C. Cir. 2011)); Manafort Resp. at 8 (same).  Under any formulation of the test, however, the mere assertion of the existence of a compelling interest is insufficient.  The Supreme Court has directed that in a trial court's ruling on access, "[t]he interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enterprise I*, 464 U.S. at 510.  Here, neither the Special Counsel nor Manafort have provided the kind of details required for the Court to make that determination.

The Special Counsel has identified two compelling government interests that it asserts are served by keeping the Warrant Materials sealed:  protecting the integrity of the ongoing investigation and "protecting uncharged individuals from unjustified reputational harm."  Gov't Resp. at 14-16 & n.6.  But the Special Counsel does not provide any specific information to

justify its claim that wholesale sealing is the most narrowly tailored way to protect those interests. For example, it asserts – without providing any method for evaluating the assertion – that the Warrant Materials "are [so] replete with sensitive investigatory information [that] little information of public interest would remain" if that sensitive material were redacted. *Id.* at 16. And it is difficult to imagine how making public generic information such as the "dates and volume of warrants," *id.* at 15, would hamper the investigation – particularly given that the Special Counsel already has publicly identified by case number seven warrants involving Manafort. *See* Mem. at 7-8.

The existence of the Russia Investigation, its broad parameters, and at least some of its subjects and targets have been common knowledge for more than a year, as the Special Counsel acknowledges. *E.g.*, Gov't Resp. at 3 (noting that then-FBI Director James Comey confirmed existence of probe in testimony before House Permanent Select Committee on Intelligence on March 20, 2017); *id.* at 4 (quoting publicly released order appointing Special Counsel to investigate, *inter alia*, "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump"); *id.* at 5-6 & Appendix A (listing 22 individuals and corporate entities who have been indicted or entered guilty pleas in connection with Russia Investigation). While there conceivably may be some individuals who would be "tipped off" to the Special Counsel's interest in their activities by the release of some of the Warrant Materials (and the Media Coalition agrees that, if this is demonstrably so, such information may remain sealed), it is difficult to comprehend how each and every document in those materials could be so rife with sensitive secrets that the entire batch must remain completely sealed. The Special Counsel offers little more than its say-so that *none* of this information may be safely released. But, as the Fourth Circuit observed in a case cited by the

Special Counsel, "not every release of information contained in an ongoing criminal investigation file will necessarily affect the integrity of the investigation." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 579 (4th Cir. 2004). It therefore falls to this Court to make specific, on-the-record findings justifying any continued secrecy.

To be clear, the Media Coalition does not dispute that the Russia Investigation is ongoing, complex, and may involve avenues of investigation and potential subjects or targets that, for good reason, are not currently public. Nor does the Coalition disagree with the Special Counsel's legitimate efforts to protect the integrity of this politically charged probe; in fact, the Coalition agrees that it is important to ensure a fair and impartial investigation. *See* Mem. at 14-15. However, it is precisely because the investigation has been criticized as overbroad and illegitimate by the President, Manafort and others that the maximum possible transparency in these proceedings is essential to serve the public's First Amendment interests as well as those of Manafort, the Special Counsel's office, and the criminal justice system as a whole. *See Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 7 (1986) ("*Press-Enterprise II*") ("[O]ne of the important means of assuring a fair trial is that the process be open to neutral observers.").

Manafort advances another compelling interest he believes will be served by secrecy in this case: his Sixth Amendment right to fair trials. Manafort Resp. at 8-11. But, like the Special Counsel, Manafort's argument is heavy with conclusions and light on specifics. As the Court knows, the cases arising from the Russia Investigation are, rightfully, the subject of the most intense public interest and discussion of any criminal actions in living memory. With all due respect to Manafort, that preexisting publicity is such that he cannot plausibly contend that the release of the Warrant Materials would tip the balance against him in the mind of even one member of the venire either here or in the Eastern District of Virginia. The Supreme Court has

recognized that, while the Sixth Amendment right to a fair trial is important, "[t]he First Amendment right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant of that right." *Press-Enterprise II*, 478 U.S. at 15. The Court emphasized that the First Amendment access right can be overcome "only if specific findings are made demonstrating that, first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights." *Id.* at 14.

The fact that news reports about the contents of the Warrant Materials *might* be, in Manafort's view, "misleading" or "speculat[ive]," Manafort Resp. at 10-11, is immaterial. In *Press-Enterprise II*, the Supreme Court rejected a magistrate's finding that closure of a preliminary hearing "was necessary because the case had attracted national publicity and 'only one side may get reported in the media.'" 478 U.S. at 4 (citation omitted). Manafort's argument amounts to no more than a collection of the kind of conclusory assertions the Supreme Court has held are insufficient to overcome the public's right of access.

Moreover, Manafort's protestations that public release of the Warrant Materials would harm his fair trial or privacy interests are belied by the fact that he affirmatively chose to place on the public record in this Court materials related to the search warrants for his Alexandria condominium and storage unit. *See* Ex. A, Def. Paul J. Manafort, Jr.'s Mot. to Suppress Evidence and the Fruits Thereof Relating to the Gov't's Search of his Residence Located in Alexandria, Va., *United States v. Manafort*, No. 1:17-cr-00201-ABJ ("*U.S. v. Manafort*"), filed Apr. 9, 2018 (Dkt. 264-1); Exs. A-C, Def. Paul J. Manafort, Jr.'s Mot. to Suppress Evidence and All Fruits Thereof Relating to the Gov't's Search of the Storage Unit Located in Alexandria, Va.,

*U.S. v. Manafort*, filed Apr. 6, 2018 (Dkts. 257-1-3).[5]  Those publicly filed materials included a

copy of the lease for the storage unit that discloses its precise address, *id.* Ex. C at 1, which

Manafort now disingenuously claims is the kind of "private" information that must be kept

secret, Manafort Resp. at 13.[6]

      In sum, the qualified First Amendment right of access to the Warrant Materials requires

those records to be released absent specific, on-the-record findings that sealing specific

information is essential to preserving the integrity of the Russia Investigation and/or protecting

Manafort's Sixth Amendment rights.  The Media Coalition respectfully submits that neither the

Special Counsel nor Manafort has provided any basis for such findings, and the Warrant

Materials therefore should be released (subject only to any narrowly tailored redactions the Court

finds are necessary).

---

[5] Manafort also complains that he has not been given access to unredacted versions of all of the search warrant affidavits he sought in discovery in this case.  Manafort Mem. at 14-15.  As the Court knows, the Government had produced substantially unredacted materials to Manafort such that only the affidavits in support of two warrants remained at issue on his motion to compel. The Court approved "limited redactions" withholding from them only "the names of confidential sources who had provided information to the government, and information relating to ongoing investigations that does not bear upon the allegations in either of the two cases now pending against Manafort."  Order at 3, *U.S. v. Manafort*, filed May 29, 2018 (Dkt. 312).  While the Court should make an independent determination to unseal the Warrant Materials based on the criteria regarding First Amendment and common-law rights of access, the Media Coalition does not object to redactions of the names of confidential law enforcement sources or other information whose sealing is necessary to protect the ongoing investigation.  *See* Mem. at 15-16.

[6] Manafort also lacks any protectable privacy interest in the address of his Alexandria residence because that address has been so widely reported that it is available in seconds to anyone with Internet access.   Moreover, the currently operative indictment against Manafort lists the addresses of four properties and the names of three financial institutions holding Manafort's assets that the Government seeks to forfeit should Manafort be convicted.  *See* Superseding Indictment at 29-30, *U.S. v. Manafort*, filed June 8, 2018 (Dkt. 318).

**B.  The Special Counsel's and Manafort's Objections Do Not Overcome the Common-Law Access Right**

While the First Amendment-based right of access should be dispositive of the question, alternatively, the common law right of access also applies.  The parties agree that, where the common-law right applies, courts must balance the government's interest in keeping materials sealed against the public's interest in disclosure, considering:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (citing *Hubbard,* 650 F.2d at 317-22) (additional citations omitted); *see also* Gov't Resp. at 17; Manafort Resp. at 12; Mem. at 17 (quoting alternate formulation of *Hubbard* test from *In re NYT*, 585 F. Supp. 2d at 92).  Here, too, the Special Counsel's and Manafort's arguments are insufficient to justify the continued blanket sealing of all of the Warrant Materials.

The first factor, the public's need for access to the Warrant Materials, weighs heavily in favor of disclosure, Mem. at 18, which the Special Counsel does not dispute, Gov't Resp. at 18. Manafort's contention that "the public generally is not entitled to understand the details of a criminal investigation while it is . . . ongoing," Manafort Resp. at 13, even if it were true as an overall proposition (it is not), ignores the reality that *this* investigation is of such importance to our democracy that the public unquestionably has an overwhelming interest in understanding the details.  Both the Special Counsel and Manafort argue that the second factor weighs against disclosure because the Warrant Materials have not been made public.  Gov't Resp. at 18, Manafort Resp. at 13.  Even so, this factor should not be dispositive; the access right would be meaningless if prior sealing justified continued sealing.

Regarding the third factor, the fact that the Special Counsel and Manafort have objected to disclosure would favor sealing, though this factor is outweighed by the public interest in these materials.  *See* Mem. at 19.  Contrary to the assertions by the Special Counsel and Manafort, Gov't Resp. at 18, Manafort Resp. at 13-14, the fourth factor does not weigh in favor of disclosure.  As discussed *supra*, Manafort's privacy claims are weak and contradicted by his own public filings, and in any event the legitimate privacy concerns of any person can be addressed through specific redactions rather than blanket sealing.

The fifth factor, the possibility of prejudice to those opposing disclosure, also can be addressed through redactions and, as discussed *supra*, the Special Counsel and Manafort have not provided sufficient specifics for the Court to be able to make findings justifying continued blanket secrecy.  The sixth factor was unique to the *Hubbard* case, and Judge Lamberth noted that it is irrelevant to the analysis regarding access to warrant materials.  *In re NYT*, 585 F. Supp. 2d at 92 n.13.  Even if this factor were relevant, Manafort's argument on this point is unpersuasive.  Manafort Resp. at 14.  Warrant materials by their nature are preliminary and do not contain facts tested in adversary proceedings, so to say that this means they should be kept secret would bar public access to warrant materials entirely, which is not the law.  *See In re WP II*, 201 F. Supp. 3d at 129; *In re NYT*, 585 F. Supp. 2d at 87 n.2.

For these reasons, therefore, even assuming the First Amendment-based right of access is not dispositive, the objections by the Special Counsel and Manafort are insufficient to tip the balance in favor of continued sealing even under the common-law access right.

### C.   The Court Should Either Order The Warrant Materials Unsealed Subject To Specific Permitted Redactions, Or Conduct Its Own Review To Determine The Propriety Of Unsealing

In light of the foregoing, the Media Coalition respectfully suggests that the proper course is for the Court either (1) to order that the Warrant Materials be unsealed, subject to redaction of

specific categories of information identified by the Court, the withholding of which is clearly justified, such as bank account numbers and informants' names, or (2) to first avail itself of the Special Counsel's offer to provide the Warrant Materials for an *in camera* inspection, Gov't Resp. at 5 n.4, so that the Court may make specific findings on the record justifying sealing of specific portions of the materials.[7]

### III.    The Court Should Unseal All Of The Manafort Records

The Manafort Records – judicial records in the Manafort prosecution before this Court, Mem. at 8-9 – should be unsealed because Manafort's arguments in favor of continued sealing are even more conclusory than those regarding the Warrant Materials.  *See* Manafort Resp. at 15-21.  Moreover, the Special Counsel does not object to unsealing substantially all of the two warrants served in Virginia that are the subjects of Manafort's suppression motions and does not take a position regarding the rest of the Manafort Records.  Gov't Resp. at 20.  And Richard Gates, Manafort's co-defendant who has pleaded guilty and is the subject of some of the records, has not objected to their release.

For the reasons discussed *supra*, Manafort's contentions that unsealing the Virginia warrants would invade his privacy and jeopardize his rights to fair trials are simply not credible, particularly given that he affirmatively chose to place portions of those materials on the public record without seeking to file them under seal.  The Special Counsel, correctly noting that these warrants are judicial records subject to the public's rights of access, does not oppose their release (subject to redactions for unspecified "sensitive information").  Gov't Resp. at 20.  The Court should, therefore, unseal these two warrants and their related materials subject only to precise redactions narrowly tailored to protect the government's and Manafort's legitimate interests.

---

[7] The Media Coalition also respectfully requests that, rather than holding *ex parte* proceedings related to unsealing the Warrant Materials, the Court allow counsel for the Coalition to participate in those proceedings, subject to an appropriate protective order if necessary.

Manafort's contention that the transcript of the January 22 hearing should remain sealed fares no better. Manafort Resp. at 16-19.  Although Manafort understandably wishes it were not so, *id.* at 16-18, the law is clear that the transcript is the kind of pretrial record subject to both the First Amendment and common-law rights of public access, Mem. at 19-20. Any truly private information regarding Manafort's finances or those of third parties, Manafort Resp.at 16, can be redacted.  Manafort has not explained why such redactions would be insufficient to protect legitimate privacy interests.

Further, Manafort misconstrues the Media Coalition's arguments when he contends that "[t]he only purported benefit to public access" the Coalition identified was "a general public interest in the 'Russia Investigation.'"  Manafort Resp. at 18.  While that interest is indeed a compelling one that will be served by unsealing, the Memorandum also identifies other interests such as the general public interest in understanding the workings of the justice system, both in general and related to Manafort's case.  Mem. at 17-22.  Indeed, the public has a keen interest in learning more details regarding Manafort's terms of pretrial release, including because those details will provide further context to understand the Special Counsel's recent invocation of public safety as a rationale supporting its request to alter or revoke Manafort's pretrial release based on his alleged attempts at witness tampering.  *See* Gov't's Mot. to Revoke or Revise Def. Paul J. Manafort, Jr.'s Current Order of Pretrial Release, *U.S. v. Manafort*, filed June 4, 2018 (Dkt. 315).

Similarly unavailing are Manafort's arguments that the remaining records, those involving the withdrawal of Gates' former attorneys, should remain sealed.  Manafort Resp. at 19-21.  Even assuming *arguendo* that information about his co-defendant "would be potentially prejudicial" to Manafort (and Manafort has not made such a showing), *id.* at 20, Manafort does

not explain why keeping these records completely sealed is the only way to protect his right to fair trials.  Continued sealing requires a finding that unsealing the records would probably prejudice Manafort's right to fair trials and that reasonable alternatives would not protect that right.  *Press-Enterprise II*, 478 U.S. at 14.  Manafort has not provided sufficient justification for such a finding.

Because the Special Counsel and Gates do not object, and because Manafort's objections do not justify sealing, this Court should unseal the Manafort Records subject to redactions of information that it specifically finds would jeopardize the compelling interests of the government or the defendant.

## **CONCLUSION**

For all of the foregoing reasons and those set forth its opening brief, the Media Coalition respectfully requests that the Court grant its motion and enter an order unsealing the Warrant Materials and the Manafort Records, subject to those narrowly tailored redactions for which the Court makes specific findings that such redactions are necessary to protect the compelling interests raised by the Special Counsel and Manafort.

Respectfully submitted,

Dated: June  11, 2018                    BALLARD SPAHR LLP


                                        By:    */s/Jay Ward Brown*

                                        Jay Ward Brown (D.C. Bar No. 437686)
                                        brownjay@balladspahr.com
                                        Matthew E. Kelley (D.C. Bar No. 1018126)
                                        kelleym@ballardspahr.com
                                        BALLARD SPAHR LLP
                                        1909 K Street, NW
                                        Washington, D.C. 20006-1157
                                        T: (202) 508-1136
                                        F: (202) 661-2299

                                        *Counsel for The Associated Press; Cable*
                                        *News Network, Inc.; The New York Times*
                                        *Co.; POLITICO LLC; and WP Co., LLC,*
                                        *d/b/a the Washington Post*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of June, 2018, I caused the foregoing Reply Memorandum of Points and Authorities in Support of Public Access to Certain Sealed Court Records to be filed and served electronically via the Court's ECF system upon counsel of record, as follows:

Robert S. Mueller III
Michael R. Dreeben
Andrew Weissmann
Adam C. Jed
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue, NW
Room B-103
Washington, DC 20530
(202) 616-0800

*Counsel for the United States of America*

Kevin M. Downing
Law Office of Kevin M. Downing
601 New Jersey Avenue NW
Suite 620
Washington, DC 20001
(202) 754-1992
kevindowning@kdowninglaw.com

Thomas E. Zehnle
Law Office of Thomas E. Zehnle
601 New Jersey Avenue NW
Suite 620
Washington, DC 20001
(202) 368-4668
tezehnle@gmail.com

*Counsel for Paul J. Manafort, Jr.*

I further certify that I caused the foregoing Reply Memorandum of Points and Authorities in Support of Public Access to Certain Sealed Court Records to be served via electronic mail and U.S. Mail on the following:

Thomas C. Green
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8069
tcgreen@sidley.com

*Counsel for Richard W. Gates, III*

David Edward Mills
COOLEY, LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
(202) 776-2865
dmills@cooley.com

Laura Grossfield Birger
Nicholas Andrew Flath
William Jay Schwartz
COOLEY, LLP
114 Avenue of the Americas
46th Floor
New York, NY 10036
(212) 479-6079
lbirger@cooley.com
nflath@cooley.com
wschwartz@cooley.com

*Counsel for Alex van der Zwaan*

 */s/Jay Ward Brown__*
Jay Ward Brown